UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

RENTAL COINS TECNOLOGIA DA
INFORMAÇÃO LTDA.,

Chapter 15

Case No.:

Debtor in a Foreign Proceeding.
_____/

## MOTION FOR ORDER GRANTING RECOGNITION OF
## FOREIGN MAIN PROCEEDING PURSUANT TO 11 U.S.C. §§ 1515 AND 1517
## OF THE BANKRUPTCY CODE AND RELATED RELIEF

 Átila Sauner Posse Sociedade de Advogados ("ASPS"), Judicial Administrator of the bankruptcy estate of RENTAL COINS TECNOLOGIA DA INFORMAÇÃO LTDA. (the "Debtor"), files this *Motion for Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code and Related Relief* (the "Motion"). The Motion seeks entry of an Order granting (i) recognition, pursuant to 11 U.S.C. § 1517,[1] of Debtors' bankruptcy proceeding pending before the 2nd Bankruptcy and Judicial Reorganization Court of Curitiba (the "Brazilian Bankruptcy Court"); (ii) related relief pursuant to sections 1520 and 1521; and (iii) any additional relief that may be available under the Bankruptcy Code. ASPS further requests a hearing on the initial petition (D.E. No. 1) (the "Petition") and this Motion no earlier than twenty-one days after the date the Court issues its notice of hearing, but in any event "at the earliest possible time" thereafter. *See* Fed. R. Bankr. P. 2002(q); § 1517(c).

---

 [1] Unless otherwise specified herein, all statutory references shall be to Title 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").

## PRELIMINARY STATEMENT

1.     ASPS files the Petition and this Motion pursuant to section 1504 of the Bankruptcy Code, seeking recognition of the Brazilian Proceeding as a "foreign main proceeding" as defined in section 1502(4).

2.     The Petition and this Motion are supported by the Declaration under penalty of perjury of Átila Sauner Posse (the "Declaration"), attached as **Exhibit "1"** hereto.   The Declaration itself contains exhibits referred to and incorporated herein.   The Declaration also provides a summary of the Brazilian Proceeding and Debtor's bankruptcy estates under the Brazilian Bankruptcy Court's supervision.   *See* Ex. 1.

3.     A true and correct copy of the Order of the Bankruptcy Decree dated October 25, 2022 (the "Bankruptcy Decree") along with a certified translation of same is attached as **Exhibit "2"** hereto.   Debtor's bankruptcy proceeding pending before the Brazilian Bankruptcy Court is hereinafter referred to as the "Brazilian Proceeding."

4.     ASPS is the appointed Judicial Administrator for all legal matters related to the bankruptcy of Debtors.   *Id*., at p. 9.

5.     As required by Federal Rule of Bankruptcy Procedure 1007(a)(4), the Statement of Corporate Ownership, in conformity with Rule of Bankruptcy Procedure 7007.1 is being filed concurrently herewith, along with a list a list containing the names and addresses of:

6.     ASPS is the body authorized to administer Debtor's foreign proceedings.   Ex. 2, p. 9.

7.     ASPS does not seek provisional relief against any entity under § 1519.   Ex. 1, ¶36.

8.     No litigation is pending in the United States in which Debtor is a party.   *Id*., ¶37.

2

9.      There are no other foreign main or foreign non-main proceedings pending as to Debtor as of the time of this filing. *Id.*, ¶38.

10.      The Petition, this Motion, and the Declaration demonstrate that Debtor's bankruptcy should be recognized as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

11.      ASPS seeks the type of relief that Chapter 15 was designed to provide, and Debtor's bankruptcy, the Petition, and this Motion meet all the requirements for recognition and the requested relief.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and sections 109 and 1501 of the Bankruptcy Code.

13.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

14.      Brazil is Debtors' center of main interests.

15.      Debtors' registered office was located in Brazil during the entire time that it was operational.

16.      Venue is proper in this district under 28 U.S.C. § 1410.  ASPS has retained Sequor Law, P.A. ("Sequor Law") in this District, and Sequor Law holds in its trust account in this District US $1,500.00 on behalf of and for the benefit of Debtor, to which funds Sequor Law has no rights of setoff, charging lien, or similar right.  Ex. 1, ¶ 31.

## BACKGROUND AND BASIS FOR RECOGNITION

17.      The Declaration sets forth in detail the background and basis for recognition and it is incorporated by reference as if fully set forth here.  *See generally,* Ex. 1.

18.    ASPS has satisfied each of the requirements for recognition of the Brazilian Proceeding under Chapter 15 of the Bankruptcy Code, as follows:

a.    ASPS qualifies as a "foreign representative" as defined in 11 U.S.C. § 101(24) because it is a person or body authorized in the Brazilian Proceeding to administer the liquidation of Debtors' assets and affairs or to act as a representative of the Brazilian Proceeding.  *See* Ex. 1.

b.    The Brazilian Proceeding is a "foreign main proceeding" as defined in 11 U.S.C. §§ 101(23) and 1502(4) because (i) it is pending in Brazil, which is Debtors' center of main interests; and (ii) it is a collective judicial proceeding under a law relating to insolvency or adjustment of debt in which proceeding Debtors' assets and affairs are subject to the supervision of the Brazilian Bankruptcy Court for the purpose of liquidation.  *See* Ex. 1, at ¶¶ 8 and 33; Ex. 2.

c.    This Motion is accompanied by (i) a copy of the Bankruptcy Decree, dated October 25, 2022, placing Debtors into a liquidation in bankruptcy (Ex. 2), with an English translation of same; and appointing ASPS as Judicial Administrator for legal matters, with an English translation of same (Ex. 2).

d.    The Declaration contains a list of all foreign proceedings, persons, or entities that must be identified under 11 U.S.C. § 1515 and Federal Rule of Bankruptcy Procedure 1007 known to ASPS.  *See* Ex. 1, at ¶¶ 36 - 39.

e.    Finally, ASPS asserts that section 109(a) of the Bankruptcy Code does not apply herein.  *See In re Al Zawawi*, 97 F.4th 1244 (11th Cir. 2024). Nevertheless, Debtor has property in the United States in this District, including US$1,500.00 in Sequor Law, P.A.'s trust account held on behalf of and for the benefit of Debtor.

4

## RELIEF REQUESTED

19.     ASPS seeks an Order pursuant to sections 105(a), 1507, 1517, 1520, and 1521 of the Bankruptcy Code, substantially in the form of the Proposed Order attached as **Exhibit "3"** hereto, granting the following relief:

a.  Recognizing the Brazilian Proceeding as a foreign main proceeding and ASPS as the duly authorized foreign representative of Debtors;

b.  Granting the relief allowable as of right upon recognition of a foreign main proceeding under section 1520 of the Bankruptcy Code;

c.  Granting all necessary and appropriate relief under section 1521 of the Bankruptcy Code, including the following:

    i.  Staying the commencement or continuation of any action or proceeding filed without ASPS's consent concerning rights, obligations, or liabilities of either of Debtors and/or of Debtor's bankruptcy estates to the extent not stayed under section 1520(a);

    ii.  Staying execution against Debtor to the extent not stayed under section 1520(a);

    iii.  Suspending the right to transfer or otherwise dispose of any assets of Debtors to the extent this right has not been suspended under section 1520(a);

    iv.  Providing for the examination of witnesses, the taking of evidence, and the delivery of information concerning the assets, affairs, rights, obligations, or liabilities of Debtors' or of their estates under section 1521(a)(4), the

5

Federal Rules of Bankruptcy Procedure including Rule 2004, and Local Rule 2004-1;

v.  Entrusting the administration or realization of all of Debtor's assets within the territorial jurisdiction of the United States to ASPS and finding that the interests of Debtor's creditors are sufficiently protected thereby;

vi.  Entrusting the distribution of all or part of the assets of Debtor located within the United States to ASPS and finding that the interests of the creditors of Debtor are sufficiently protected thereby;

vii.  granting any additional relief that may be available to a trustee, under 1521(a)(7), except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

viii.  Requiring that other than a counterclaim to a suit brought by ASPS, no person or entity may commence suit against ASPS in any court in the United States, including this Court, without first obtaining leave of this Court;

ix.  Otherwise granting comity to and giving full force and effect to the Bankruptcy Decree attached to the Declaration; and

x.  Granting ASPS such other and further relief as the Court may deem just and proper.

## **<u>CONCLUSION</u>**

WHEREFORE, ASPS respectfully requests that this Court enter an Order substantially in the form of the Proposed Order attached as **Exhibit "3"** hereto and grant such other relief as may be just and proper.

SEQUOR LAW, P.A.

Dated: November 3, 2025        Respectfully submitted,

SEQUOR LAW, P.A.
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131
edavis@sequorlaw.com
dcoyle@sequorlaw.com
Telephone:    (305) 372-8282
Facsimile:    (305) 372-8202

By:   */s/ Daniel M. Coyle*
Daniel M. Coyle
Florida Bar No.: 55576
Edward H. Davis
Florida Bar No.: 704539

SEQUOR LAW, P.A.

*EXHIBIT "1"*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

RENTAL COINS TECNOLOGIA DA                    Chapter 15
INFORMAÇÃO LTDA.,                             Case No.:

Debtor in a Foreign Proceeding.
_____/

**DECLARATION OF THE FOREIGN REPRESENTATIVE IN SUPPORT OF**
**CHAPTER 15 PETITION FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING**

I, Átila Sauner Posse, hereby declare under penalty of perjury under the laws of the

United States as follows:

1.      This Declaration is submitted in support of the Chapter 15 Petition for Recognition

of a Foreign Proceeding pending in Brazil.

2.      I am over the age of 18 and, if called upon, could competently testify as to all

matters set forth in this Declaration based upon my own personal knowledge, except for those

parts otherwise specified.  Where matters are based on information supplied to me, those matters

are true to the best of my information, knowledge, and belief, and I clearly identify the source of

that knowledge.

3.      I am a native Portuguese speaker and have sworn the original of this Declaration in

Portuguese, as well as the English translation that was prepared for filing.

4.      I am the principal of Átila Sauner Posse Sociedade de Advogados ("ASPS"), the

appointed judicial administrator of the bankruptcy estate of RENTAL COINS TECNOLOGIA DA

INFORMAÇÃO LTDA., (the "Debtor").

5.      Debtor was placed into liquidation in bankruptcy by order of the 2nd Bankruptcy

and Judicial Reorganization Court of Curitiba, dated October 25, 2022 (the "Bankruptcy Decree").

A true and correct copy of the Bankruptcy Decree along with a certified translation of same is attached as **Exhibit "2"** to the Verified Motion for Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code and Related Relief.  Debtor's bankruptcy proceeding pending before the Brazilian Bankruptcy Court is hereinafter referred to as the "Brazilian Proceeding."

6.    The Bankruptcy Decree appointed ASPS as Judicial Administrator for all legal matters related to the bankruptcy of Debtor.   *See* Bankruptcy Decree at p. 9.  ASPS has acted in the capacity of Judicial Administrator continuously since the appointment.

7.    I am advised that within the meaning of Chapter 15 of the United States Bankruptcy Code: 11 U.S.C. § 101(24)) is the "foreign representative" of Debtor; (ii) Debtor's center of main interests has at all times relevant been in Brazil; and (iii) the Brazilian Proceeding is a "Foreign Main Proceeding."

### Factual Background

#### A.    Debtor's Business Operations

8.    Debtor was founded in 2019 in Curitiba and operated out of Curitiba.  Debtor engaged in a cryptocurrency pyramid scheme to defraud investors. Debtor enticed investors by promising high returns through a supposed cryptocurrency rental service and trading operations where Debtor proposed to rent cryptocurrencies from investors, promising at the beginning to pay interest from 0.5% to 5% per month and return the investor's assets at the end of a contract year. The scheme involved public events, prize draws, and even high-profile victims like Brazilian celebrity Sasha Meneghel, who reportedly lost 1.2 million reais.

9.    Federal police investigations revealed that the entire operation was a classic pyramid scheme. There were no legitimate investments, and new investors' money was used to pay earlier investors.

10.     Debtor was managed by its managing member, Francisley Valdevino da Silva ("Valdevino"), a Brazilian citizen, single, registered with the Individual Taxpayer's Register (CPF) under No. 362.089.558-90, resident and domiciled at Rua Deputado Heitor Alencar Furtado, 3350, 13th floor, suite 1301.

11.     Valdevino was know as the "Bitcoin Sheikh" and lived a luxurious lifestyle based upon the fraudulent activities of Debtor funding his lifestyle.

12.     Valdevino was sentenced to 56 years in prison for his role in the scam. He is currently appealing the conviction. Valdevino was also implicated in a similar scam in the US, potentially defrauding several victims from Spanish-speaking communities in the US through the company Forcount.

13.     The investigation began at the request of the U.S. Homeland Security Investigations ("HSI"), received by the Federal Police through Interpol, containing information that the company Forcount and Valdevino were being investigated by the El Dorado Task Force, of HSI New York, for involvement in a money laundering conspiracy, based on a pyramid scheme of investments in cryptocurrencies.

14.     The investigations carried out by the Federal Police culminated in Operation Poyais, launched on October 6, 2022 in Curitiba, when Federal Police agents carried out search and seizure warrants issued by the 23rd Federal Court of Curitiba, for the purpose of deepening the investigations that point to the existence of a fraudulent scheme that would have transacted almost four billion Reais (R$4 billion) in Brazil.

**B.      The Liquidation Proceeding**

15.     The Liquidation was initiated when Plaintiff Fernando Cesar Nero Corsi ("Corsi"), based on article 94, I of the Bankruptcy and Judicial Reorganization Law (LFRJ) and on articles 811 et seq. of the Code of Civil Procedure, filed a claim for enforcement of instrument enforceable

out of court coupled with a claim for bankruptcy against Debtor and another entity alleging, in summary, to be a creditor of Debtor in the amount of sixty-six thousand two hundred and nineteen reais and ninety-seven cents (R$66,219.97), originating from a private agreement for the temporary assignment of use of digital protocols. Corsi also claimed, by way of interlocutory relief, the seizure of cryptoassets.

16.     Ultimately, Corsi amended his complaint to pursue only the claim for bankruptcy.

17.     Debtor was served with process and filed defenses, challenging the assertion of financial insolvency.

18.     The Brazilian Bankruptcy Court, Judge Luciane Pereira Ramos, entered the Bankruptcy Decree in Case: 0006047-30.2022.8.16.0185, on October 25, 2022, finding Debtor bankrupt, and appointing ASPS as Judicial Administrator in the same order.  *See* Bankruptcy Decree.

19.     The Bankruptcy Decree is in full force and effect, and the liquidation is proceeding.

20.     The Brazilian Proceeding is governed by Article 94, I of the Bankruptcy and Judicial Reorganization Law ("LFRJ"), a law relating to insolvency or adjustment of debt.

21.     Many of the creditors  are not major investors or market speculators, but are instead ordinary consumers.

22.     These facts satisfied the requirements for decreeing the liquidation of Debtor.

23.     Debtor's registered address at the time of its liquidation was Rua Oscar Borges de Macedo Ribas, 251, Loja 701 Andar 06, Curitiba/PR, CEP 81200-521.

**C.**     **Debtor Has a Domicile, Place of Business, or Property in the United States**

24.     ASPS seeks recognition of the Brazilian Proceeding in furtherance of a worldwide pursuit of assets with which to satisfy unpaid claims as well as to investigate, identify, and marshal assets of Debtor in the United States, which include without limitation claims and causes of action

belonging to Debtor's bankruptcy estate.

25.    In particular, ASPS seeks to identify assets in the United States belonging to Debtor.

26.    Additionally, HSI investigated Valdevino in relation to scams of Valdevino in the United States.

27.    ASPS has employed lawyers and other professionals who have performed tracing analyses on multiple cryptocurrency transactions involving cryptocurrency purchased and/or traded by Debtor.

28.    These investigations point to potential use of exchanges with operations in the US and assets of Debtor in the United States as well as potential assets of Valdevino that were purchased with Debtor's assets.

29.    ASPS, upon recognition of the petition, will seek to obtain discovery on the activities of Debtor, the assets of Debtor and assets of Valdevino in connection with the criminal illicit schemes conducted by Valdevino.

30.    ASPS will also seek to serve discovery upon CHIPs and other financial institutions to attempt to trace the flow of funds.

31.    If discovery indicates, ASPS will seek to turnover, claw back and marshal assets of Debtor in the US for distribution to the creditors in Brazil.

32.    In addition to the above, ASPS has retained the Miami, Florida law firm Sequor Law, P.A. ("Sequor Law").  Sequor Law holds in its trust account in this District US$1,500 deposited by ASPS on behalf of and for the benefit of Debtor, to which funds Sequor Law has no rights of setoff, charging lien, or similar right.

33.    ASPS is a person or body authorized in the Brazilian Proceeding to administer the

liquidation of Debtors' assets and affairs and to act as a representative of the Brazilian Proceeding.

34.     The Brazilian Proceeding is a "foreign proceeding" because it is a collective judicial proceeding under a law relating to insolvency or adjustment of debt in which proceeding Debtors' assets and affairs are subject to the control or supervision of the Brazilian Bankruptcy Court for the purpose of Debtors' liquidation.

35.     The Brazilian Bankruptcy Court appointed my firm as Judicial Administrator.  My firm's address in that capacity is as follows: Av. Presidente Washington Luiz, 372 - Jardim Social, Curitiba - PR, 82520-000, Brazil.

36.     For purposes of this proceeding, ASPS requests that any correspondence be sent, in addition to the address provided above, to the following:

Sequor Law, P.A.
Attn: Daniel M. Coyle
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131

**D.     Parties to Any U.S. Litigation in which Debtors are a Party**

37.     ASPS is not aware of any ongoing litigation pending in the United States in which Debtor is a party.

38.     ASPS is not seeking provisional relief under 11 U.S.C § 1519.

**E.     Statement Identifying Foreign Proceedings With Respect to Debtor**

39.     Other than the Brazilian Proceeding referenced herein, ASPS is not aware of any other Foreign Proceedings with respect to Debtors, as the term "foreign proceedings" is defined in 11 U.S.C. § 101(23).

**F.     Statement Identifying Other Parties entitled to Notice**

40.     There are no other parties entitled to notice.

FURTHER DECLARANT SAYETH NAUGHT.

I, Átila Sauner Posse, declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that I am the principal of ASPS, the court-appointed Judicial Administrator for Debtor, and that, in such capacity, I have the authority to make this Declaration; that I have read the foregoing Declaration; that the facts and matters alleged and contained herein are true and correct, based upon my own personal knowledge of the facts involved and upon my review of the available documents pertaining to Debtor.

Executed in São Paulo, Brazil on 22 October, 2025

Átila Sauner Posse
for and on behalf of the Estate of Debtor

*EXHIBIT "2"*

PROJUDI - Case: 0006047-30.2022.8.16.0185 - Re. Procedural Motion 80.1 – Digitally signed by Luciane Pereira Ramos:10086 10/25/2022: ACTION GRANTED. File: Judgment

## JUDICIAL BRANCH OF THE STATE OF PARANÁ

## JUDICIAL DISTRICT OF THE METROPOLITAN REGION OF CURITIBA - CENTRAL COURTHOUSE OF CURITIBA

## 2nd BANKRUPTCY AND JUDICIAL REORGANIZATION COURT OF CURITIBA - PROJUDI

## JUDGMENT

Procedural Class: Bankruptcy of Entrepreneurs, Business Companies, Micro Businesses and Small Companies

Main Subject: Interlocutory Relief

Case No.: 0006047-30.2022.8.16.0185

Plaintiff(s): FERNANDO CESAR NERO CORSI

Defendant(s): INTERAG ADMINISTRAÇÃO DE FUNDOS LTDA

RENTAL COINS TECNOLOGIA DA INFORMAÇÃO LTDA

## I - REPORT:

Plaintiff Fernando Cesar Nero Corsi, duly identified in the complaint, based on article 94, I of the Bankruptcy and Judicial Reorganization Law (LFRJ) and on articles 811 et seq. of the Code of Civil Procedure, filed this claim for enforcement of instrument enforceable out of court coupled with a claim for bankruptcy against Rental Coins Tecnologia da Informação Ltda. and Interag Administração de Fundos Ltda., alleging, in summary, to be a creditor of the defendant in the amount of sixty-six thousand two hundred and nineteen reais and ninety-seven cents (R$66,219.97), originating from a private agreement for the temporary assignment of use of digital protocols. Plaintiff also claimed, by way of interlocutory relief, the seizure of Cryptoassets. He entered documents of record, Procedural Motions 1.2 to 1.17.

An amendment to the complaint was determined due to the impossibility of cumulating a claim for enforcement of an instrument enforceable out of court, seizure and bankruptcy, Procedural Motion 16, and the plaintiff did so in Procedural Motion 20, maintaining only the claim for bankruptcy based on article 94, I of the LFRJ.

Debtor Interag Administração de Fundos Ltda. was duly served process, Procedural Motion 35, and filed a response and documents, Procedural Motion 39, claiming, by way of preliminary argument, lack of right of action due to the lack of notification of one of the managing members regarding the protest, which was received by the doorman of defendant Rental, as well as that Interag was not notified; lack of interest in the suit, as plaintiff distorts the bankruptcy petition in order to promote the forced collection of his debt; on the merits, it highlights the impossibility of adjudication of bankruptcy due to the existence of an action for a Preliminary Provisional Remedy (with a claim for interlocutory relief to anticipate the effects of the granting of the processing of the Judicial Reorganization and Interlocutory Relief), which is being processed in the 2nd Bankruptcy and Judicial Reorganization Court of Curitiba under No. 0008402-13.2022.8.16.0185; the illiquidity of the debt, given that the agreement signed between the parties does not provide for payment in actual currency, but rather leasing of Cryptoassets, and in the event of termination of the agreement, the lessor, now plaintiff, shall return the transferred asset, i.e., its Cryptoassets; and the absence of financial insolvency. Lastly, it stated that it was interested in holding a conciliation hearing and requested denial of the claim.

Objection in Procedural Motion 51.

Defendant Rental Coins Tecnologia da Informação Ltda. was served process and also filed a response and documents, Procedural Motion 71, claiming, by way of preliminary argument, the lack of right of action due to the lack of notification of one of the managing members regarding the protest, which was received by the doorman; the lack of interest in the suit, as the plaintiff distorts the claim for bankruptcy in order to promote the forced collection of his credit; on the merits, it highlights the impossibility of the company being adjudicated bankrupt due to the existence of an action for Preliminary Provisional Remedy (with a claim for interlocutory relief to anticipate the effects of the granting of the processing of the Judicial Reorganization and Interlocutory Relief), which is being processed in the 2nd Bankruptcy and Judicial Reorganization Court of Curitiba under No. 0008402-13.2022.8.16.0185; the illiquidity of the debt, considering that the agreement signed between the parties does not provide for payment in actual currency, but rather the rental of Cryptoassets, and the lessor, now plaintiff, is responsible, in the event of termination of the agreement, to return the transferred asset, i.e., its Cryptoassets; the absence of financial insolvency.

This is the brief report. I decide.

## II - GROUNDS:

The case involves a claim for bankruptcy pursuant to the provisions of article 94, I of the LFRJ:

*Art. 94. The debtor shall be adjudicated bankrupt if:*

*I - without relevant legal reason, it fails to pay, on the due date, a net obligation materialized in a protested instrument or instruments the sum of which exceeds the equivalent of forty (40) times the minimum wage on the date of the filing for bankruptcy;*

The claim made in the complaint is based on an instrument enforceable out of court, in accordance with article 784, III of the Code of Civil Procedure (CPC), Temporary Assignment Agreement (rental) for the Use of Cryptoassets Called BTC - BTC, duly signed by two witnesses, Procedural Motion 20.7.

The overdue obligation was not paid, calculation spreadsheet of Procedural Motion 20.6, and the late payment was rescheduled by the protest for bankruptcy purposes, Procedural Motion 20.3.

The credit exceeds 40 times the minimum wage.

**Preliminary Arguments**

Lack of interest in the suit

Both defendants argue that the plaintiff lacks interest in the suit due to the distortion of the bankruptcy institute, as a means of forced collection of the debt.

They are not right.

The Code of Civil Procedure states the following with respect to the interest in the suit:

*Art. 17. To file a lawsuit in court, it is necessary to have interest and legitimacy.*

Regarding interest in the suit, Humberto Theodoro Júnior teaches as follows[1]

> *The interest in the suit, at the same time, must translate into a relationship of necessity and also into a relationship of adequacy of the provision claimed, given the conflict of substantive law brought to judicial resolution".*

Note that interest in the suit is important in an abstract analysis of the combination of three requirements: necessity, usefulness, and adequacy.

In the present case, the plaintiff's interest in the suit is evident, given that for a bankruptcy petition to be justified, it is sufficient to demonstrate late payment, understood as a typical manifestation of the debtor's state of bankruptcy, and that the instrument be certain, liquidated, and enforceable, duly protested, as provided for in article 94, item I of the LFRJ.

With respect to this matter:

*In fact, particularly in a claim based on unreasonable delay, it is sufficient to demonstrate the non-fulfillment of the obligation made through the protest. It is not necessary to demonstrate the debtor's economic insolvency **[2]**.*

I therefore deny the preliminary argument raised.

<u>Lack of right of action</u>

Both defendants also claim the lack of right of action, as the adjudication of bankruptcy requires that the document on which it is based be protested specifically for bankruptcy purposes, with personal notification of the defendant's legal representative, which did not occur in the present case, as according to the protest instruments in Procedural Motion 20.3, the person who received the notification did not have the power to do so, and there is no protest specifically against the defendant Interag.

In the case at hand, the existence or not of a defect in the protest, requires analysis of the merits of the lawsuit, as this is a cause for denial of the claim for bankruptcy if so found, in accordance with article 96 of the LFRJ, and therefore, the merits will be analyzed.

**Merits:**

<u>I - Interag:</u>

Regarding the lack of protest against defendant Interag Administração de Fundos Ltda., the defendant is right, as article 94, paragraph 3 of the LFRJ is clear in providing that claims for bankruptcy based on article 94, I of the LFRJ, must be **accompanied by the respective protest instruments.**

In this regard:

*"The debtor's default presupposes, as seen, the non-payment of a net pecuniary obligation claimable in bankruptcy, contained in a due and payable enforceable instrument, without any relevant legal reason being verified. However, for the creditor to be entitled to claim the debtor's bankruptcy, the law requires, as a **conceptual complement to the delay system, public, official, and solemn evidence thereof, which, according to positive law, is only made by the protest of the instrument"[3].***

*"The claim for bankruptcy based on late payment by the businessman or business company shall be accompanied, by virtue of article 94, paragraph 3 of Law 11.101/2005, by the enforceable instruments, displayed in the original or by certified copies if they are entered of record in other proceedings, **accompanied, in any case, by the respective protest instruments[4]".***

*"In the case of bankruptcy based on Article 94, item I, the complaint shall be accompanied by the original counterparts of the enforceable instruments not paid on the due date, **accompanied by the protest certificates issued by the notary public.** If the instruments are entered of record in other proceedings, certified copies may be attached to the bankruptcy complaint[5]".*

In the case at hand, examining the documents presented, it can be seen that there is only a protest in the name of defendant Rental Coins, Procedural Motion 20.3, but not against defendant Interag.

In the absence of an essential document for the bankruptcy request based on article 94, I coupled with 94, paragraph 3 and 96, VI of the LFRJ, it is necessary to deny the claim against defendant Interag Administração de Fundos Ltda.

**II - <u>Rental Coins:</u>**

In its answer, Procedural Motion 71, the debtor alleges in a concise summary: a) that the protest instrument is irregular; b) the claim for bankruptcy is confused with a collection suit; c) the existence of a request for judicial reorganization; d) that the instrument lacks liquidity, certainty, and enforceability, and therefore it cannot be protested; e) the income is being paid to plaintiff; f) the absence of insolvency.

**a.** <u>Irregularity of the Protest Instrument:</u>

Defendant Rental Coins claims that the protest is defective, as it was not received by one of the managing members, but rather by the defendant's doorman.

According to the provisions of article 96 of the LFRJ:

*Art. 96. Bankruptcy requested based on art. 94, item I of the head paragraph of this Law shall not be declared if the defendant proves:*

…

*VI. - defect in the protest or its instrument; (...)"*

This defect in the protest, however, is not characterized by the lack of receipt thereof by one of the managing members, as the Superior Court of Justice has already settled that for bankruptcy purposes, it will only be necessary to identify the person who received it:

**PRECEDENT 361:**

*The notification of the protest, for the bankruptcy request of the debtor company,* **requires the identification of the person who received it.**

In the case at hand, the person who received the protest instrument, Procedural Motion 20.3, is perfectly identified as Mr. Rogério Fernandes, identification document No. 10305921-6, who the defendant itself informs is the company's doorman.

Therefore, there is no defect in the protest.

*b.* bankruptcy petition confused with collection suit

According to debtor Rental Coins, the credit that supports the bankruptcy petition should have been collected through the appropriate means, and *it is not possible (or even admissible) to present an alternative claim so that, in the event of a deposit in court of the amount claimed in the bankruptcy petition, the Defendant is ordered only to pay the amount indicated.*

Apparently, the debtor confuses the deposit in court of the amount claimed in the bankruptcy petition, which is actually a means of defense for the defendant, with an alternative claim for collection of the credit.

This is the content of the plaintiff's claim:

*(iii) If the Defendants wish to avoid bankruptcy with a deposit, they must do so by updating the calculation presented up to the date of payment, that is, adding adjustment for inflation, legal interest, attorneys' fees and court costs;*

which complies with the provisions of the sole paragraph of article 98 of the LFRJ:

**Sole Paragraph.** *In claims based on items I and II of the head paragraph of art. 94 of this Law, the debtor may, within the term for filing the answer, deposit the amount corresponding to the total debt, plus adjustment for inflation, interest and attorneys' fees, in which case bankruptcy will not be adjudicated and, if the bankruptcy petition is granted, the judge will order the claimant to withdraw the amount.*

There is, therefore, no abuse of rights on the part of plaintiff, much less an attempt to coerce the debtor into payment by confusing the bankruptcy petition with collection.

What we have is the legal possibility for the debtor to avoid bankruptcy for its own benefit, so to speak.

*c.* existence of a judicial reorganization petition

As acknowledged by debtor Rental Coins itself, it filed an Action for Preliminary Provisional Remedy, Case No. 08402-13.2022.8.16.0185, claiming the following:

*In view of all the above, given the formal and substantive requirements necessary to support* **this claim for preliminary provisional remedy with a claim for interlocutory relief to anticipate the effects of the granting of the processing of the Judicial Reorganization and interlocutory relief,** *based on article 6, paragraph 12 coupled with art. 47 of Law 11.101/2005 and article 300 et seq. of the Code of Civil Procedure, in order to preserve the continuity of the company and maintenance of jobs and generation of work and income and, MAINLY THE SATISFACTION OF CUSTOMER CREDITS, we hereby request the following to this Court:*

*a) That the preliminary provisional remedy be granted, ordering the start of the stay period and anticipating the effects of the processing of the Judicial Reorganization, ordering the stay of all actions and/or executions in progress against the Claimants, for a term of one hundred and eighty (180) calendar days (art. 6 of Law 11.101/2005), including those arising from subsidiary and/or joint and several obligations, until the beginning of the main proceedings;*

*b) That the suspension of any restrictions (provisional attachments, seizures, sequestrations, and judicial blocks) that may exist on the assets of the Claimants and the companies that make up the Group be ordered, transferring the amounts to the Universal reorganization Court so that they can be subject to due reimbursement to investors/creditors in a transparent and fair manner;*

*c) That this decision serves as an official letter, authorizing the Claimant's counsel to present it to the Courts where the actions are in progress, as well as to public bodies and individuals/legal entities with whom they have legal transactions;*

*d) **The Claimants inform that the main claim, which will be made within 30 days as from implementation of the measure requested herein, consists of a Filing for Judicial Reorganization, governed by Law 11.101/2005;***

*(emphasis added)*

Considering that to this time the complaint of these proceedings has not even been received by the Court due to the need for successive amendments, nor has the interlocutory relief measure been granted and even less so has the main claim been filed, it is not possible to consider that the filing for judicial reorganization has been carried out for defense purposes and with the force to stay this bankruptcy.

It is important to note that the claim for preliminary provisional remedy based on article 6, paragraph 12 coupled with art. 47 of Law 11.101/2005 and article 300 et seq. of the Code of Civil Procedure is not to be confused with and did not replace the necessary filing for judicial reorganization prior to or within the term for the submission of answer, as authorized by article 95 of the LFRJ.

That having been said, there is no prior filing for judicial reorganization or the filing for judicial reorganization in the context of an answer.

d. Lack of liquidity, certainty, and enforceability of the document subject to protest:

The debtor has no reason, as the instrument appears to be liquidated, certain, and enforceable.

Please see.

The complaint is based on an instrument enforceable out of court, in accordance with article 784, III of the Code of Civil Procedure, Temporary Assignment Agreement (rental) for the Use of Cryptoassets Named BTC - BTC, duly signed by two witnesses, Procedural Motion 20.7.

The enforceable instrument in question is certain, as it is formally perfected and the existence of the obligation can be inferred from it.

According to Teori Zavascki, to assess the certainty of the obligation, it is necessary to observe whether, by simply reading the instrument, it is possible to perceive that there is an obligation agreed, and whether it is possible to determine who the creditor and debtor are and when it must be fulfilled. If this occurs, the obligation will then be certain.[6]

These requirements have been met.

While certainty concerns the existence of the obligation, liquidity refers to the determination of its subject matter.

Humberto Theodoro teaches that: *Liquidity consists of the plus that is added to the certainty of the obligation. Through it, it is demonstrated not only that one knows 'what is due', but also 'how much is due'.* **[7]**

In the case of these records, the lease agreement under discussion is liquidated, as it sets the *amount* to be paid to plaintiff, written in Bitcoins, and a mere arithmetic operation is sufficient for the obligation to be translated into Brazilian currency, in this case Reais, as authorized by the sole paragraph of article 786 of

the Code of Civil Procedure: *The need for simple arithmetic operations to determine the credit to be enforced does not deny the liquidity of the obligation contained in the instrument.*

The aforementioned agreement, Procedural Motion 1.5, provides as follows:

*Considering that Cryptoassets are the digital representation of value denominated in its own unit of account, whose price can be expressed in local or foreign sovereign currency, transacted electronically using cryptography and distributed ledger technologies, which can be used as a form of investment, instrument for transferring amounts or accessing services, and which does not constitute legal tender.*

It can be seen, therefore, that the Cryptoassets, in this case Bitcoins, can be expressed in local or foreign sovereign currency, with no obstacles to its conversion, simply by knowing the exchange rate of the day, which is public and notorious, and available on the world wide web, and by simply consulting Google quickly, the conversion can be made through a simple arithmetic operation.

According to Section 1, the subject matter of the Agreement is as follows:

*1.1 Subject Matter - TEMPORARY TRANSFER (RENTAL) OF CRYPTOASSETS denominated BTC in the amount of **1,003500.***

*1.2 The term will be 12 months, with the Start Date on 12/02/2021 and the end date on 12/02/2022*

At today's price, 1,003500 BTC is equivalent to one hundred and two thousand, four hundred and fifty-nine reais and eight cents (R$102,459.08)

According to Section 4, the amount paid for the temporary transfer (rental) of the currency shall be the following:

...

*4.2 The converted amount for the Temporary Assignment (rental) **will be approximately 0.080280** subject to the forces of supply and demand, as established at market conditions.*

...

*4.4 The amount for the Temporary Assignment (rental) stipulated shall be paid by LESSEE by the seventh business day of each month following the due date, regardless of any notice or communication of due date or charge made available in the BackOffice owned by LESSOR, who will have free access to transfer it to a wallet of their choice.*

*4.5 If payment for the Temporary Assignment (Rental) is not made through the BackOffice on the agreed date, LESSEE will be subject to a fine of three percent (3%) of the rental amount after the due date, plus late payment interest at the rate of one percent (1%) per month on the entire debt, including all expenses necessary to carry out the respective collection.*

...

As can be seen from the answer presented, the debtor acknowledges that transactions between the parties take place in Brazilian currency, with the conversion of BTCs.

This fact is verified in the table that the debtor presents as being from its platform and which would prove the payment of income:

| 08/04/2022 10:19:20 a.m. | BTC | Income related to the Agreement #b59a45eda4 | R$105,409.35 | 80.001004 |
|---|---|---|---|---|
| 07/04/2022 3:25:13 p.m. | BTC | Income related to the Agreement #b59a45eda4 | R$105,409.35 | 80.001004 |
| 06/02/2022 6:30:15 p.m. | BTC | Income related to the Agreement #b59a45eda4 | R$145,297.78 | 80.001004 |
| 02/01/2022 | BTC | Income related to the Deposit | R$202,528.94 | 80.080280 |

| 5:00:42 p.m. | | #119478 | | |

Furthermore, as Marcelo Barbosa Sacramone teaches[8]:

> **The fact that the amount due is required does not prevent that obligations to give or affirmative covenants, other than the obligation to pay a specific amount, also be the subject of a bankruptcy petition. The identification of the provision, with the specification of the objects to be delivered or the positive or negative provisions to be carried out, allows the determination of the content of the obligation.**

In other words, the instrument must demonstrate the exact quantity of goods owed (e.g., how much to pay or what to deliver), or allow the final number to be determined arithmetically.

In the case at hand, the amount required is easily determined through a simple arithmetic operation, not forgetting that the debtor indicates that its own platform uses the Brazilian currency in its transactions.

Therefore, the instrument is not illiquid, whether for the purpose of protest or filing for bankruptcy.

Finally, enforceability is related to the possibility of demanding compliance with the obligation set forth in the instrument, as it is not subject to any condition or term.

This requirement, in bankruptcy proceedings, is proven through the bankruptcy protest, which was regularly carried out, as seen above.

*e.* the income is being paid to plaintiff:

The debtor claims that the income was being deposited normally into plaintiff's account, and as proof of payment, it entered the following image of record:

| 08/04/2022 10:19:20 a.m. | BTC | Income related to the Agreement #b59a45eda4 | R$105,409.35 | 80.001004 |
| 07/04/2022 3:25:13 p.m. | BTC | Income related to the Agreement #b59a45eda4 | R$105,409.35 | 80.001004 |
| 06/02/2022 6:30:15 p.m. | BTC | Income related to the Agreement #b59a45eda4 | R$145,297.78 | 80.001004 |
| 02/01/2022 5:00:42 p.m. | BTC | Income related to the Deposit #119478 | R$202,528.94 | 80.080280 |

Obviously, this image, in the absence of any documents or even indications, does not serve to prove payment of the income due to plaintiff and, much less, serves to eliminate the delay regularly attested by the protest of the enforceable instrument that serves as grounds for this bankruptcy petition.

f) absence of insolvency.

The issue of financial insolvency is not relevant to the outcome of this lawsuit, which is based on the debtor's unjustified delay, and which is proven, as previously stated, by the protest for bankruptcy purposes.

***

On the other hand, this lawsuit has a relevant economic and social aspect that is not normally present in other bankruptcy petitions.

The liabilities accumulated by the debtor Rental Coins and its managing member Francisley Valdevino da Silva took on such proportions that it is the subject matter of **Police Investigation No. IPL No. 2022.0014433.**

The aforementioned Police Investigation was instituted by the Federal Police to investigate the commission, in theory and in principle, of the crimes described in Art. 7, II - Law 7.492/1986, - Crimes against the National Financial System, Art. 2, IX - Law 1.521/1952 - Crimes against the public interest, Art. 2 - Law 12.850/2013 - Defines criminal organization and provides for criminal investigation and other measures., Art. 171 - Decree Law 2.848/1940 - Criminal Code and Art. 1 - Law 9.613/1998 - Money Laundering.

The investigation began at the request of the U.S. Homeland Security Investigations - HSI, received by the Federal Police through Interpol, containing information that the company FORCOUNT and the Brazilian citizen FRANCISLEY VALDEVINO DA SILVA are being investigated by the El Dorado Task Force, of HSI New York, for involvement in a money laundering conspiracy, based on a pyramid scheme of investments in cryptocurrencies.

The investigations carried out by the Federal Police culminated in Operation Poyais, launched on 10/06/2022 in this city of Curitiba, when Federal Police agents carried out search and seizure warrants issued by the 23rd Federal Court of Curitiba, for the purpose of deepening the investigations that point to the existence of a fraudulent scheme that would have transacted almost four billion *Reais* (R$4 billion) in Brazil.

These facts are not only recorded in the case records being processed under seal in the 23rd Federal Court of Curitiba, but are also widely known by the press, even deserving of a news report on the Sunday program Fantástico:

https://youtu.be/WeMPvmgE-ew

But not only that, I selected some news articles for example purposes:

https://oglobo.globo.com/brasil/noticia/2022/10/sheik-dos-bitcoins-e-alvo-de-operacao-da-pf.ghtml

https://jornalistaslivres.org/pf-faz-operacao-contra-sheik-dos-bitcoins/

https://www.infomoney.com.br/mercados/pf-mira-sheik-das-criptomoedas-em-nova-operacao-esquema-movimentou-r-4-bi-no-brasil-e-no-exterior/

https://portaldobitcoin.uol.com.br/pf-prende-acusado-de-criar-piramide-com-criptomoedas-que-movimentou-r-4-bilhoes-no-brasil-e-nos-eua/

https://economia.uol.com.br/noticias/redacao/2022/10/06/operacao-sheik-dos-biticins.htm

https://cbncuritiba.com.br/materias/quadrilha-investigada-por-fraudes-bilionarias-envolvendo-criptomoedas-no-brasil-e-no-exterior-e-alvo-de-operacao-da-policia-federal/

https://cbncuritiba.com.br/materias/policia-federal-faz-balanco-parcial-de-apreensoes-da-operacao-poyais/

https://www.bandab.com.br/seguranca/curitibano-que-comandava-fraudes-com-criptomoedas-e-alvo-da-pf/

https://www.otempo.com.br/economia/vitimas-de-sheik-dos-bitcoins-cobram-r-1-5-bilhoes-1.2752017

https://www1.folha.uol.com.br/mercado/2022/07/empresa-de-bitcoin-que-deu-golpe-em-sasha-faz-mais-vitimas-entenda-a-fraude-e-saiba-fugir.shtml

The managing member of the company Rental Coins, Francisley Valdevino da Silva, was known as the Bitcoin Sheik, and according to the Police Investigation and news articles, he would lead a luxurious life, living in the midst of luxury probably resulting from his irregular activities.

I have selected some news articles just for illustration purposes:

https://oglobo.globo.com/podcast/noticia/2022/07/a-historia-do-sheik-das-criptomoedas.ghtml

https://g1.globo.com/pr/parana/noticia/2022/10/17/sheik-dos-bitcoins-empresario-alvo-de-operacao-ostentava-vida-de-luxo-com-mansao-avioes-e-carros-importados-veja-videos.ghtml

https://www.metropoles.com/distrito-federal/na-mira/sabia-quem-e-o-sheik-dos-bitcoins-que-entrou-na-mira-da-pf-e-dos-eua

https://autopapo.uol.com.br/curta/carros-sheik-dos-bitcoins/

https://www1.folha.uol.com.br/mercado/2022/10/ouro-relogios-e-ate-aviao-do-wesley-safadao-vitimas-de-sheik-dos-bitcoins-cobram-r-15-bi.shtml

It can therefore be concluded that the bankruptcy of debtor Rental Coins also has a remedial effect by removing from the market a company through which irregularities were allegedly committed that harmed a significant number of creditors.

One of the purposes of bankruptcy is to remove from the market entrepreneurs who are unable to promptly meet their obligations to creditors and employees, also preventing the possibility of irregularities being committed to the detriment of society.

Sérgio Campinho teaches as follows[9]:

*"From its perspective of judicial liquidation of the insolvent entrepreneur's assets, eliminating entrepreneurs and the companies they developed that are economically and financially insolvent and beyond the possibility of reorganization also emerges as a form of market remediation. It therefore aims to preserve the market, preventing them from continuing their activities, given the evident disturbance and imbalance that they are capable of causing."*

\*\*\*

That having been said, despite the debtor's defense, the unreasonable default was proven in the case records, embodied in an overdue enforceable instrument, duly submitted for protest.

Therefore, having met all the requirements of article 94, item I of the LFRJ, it is imperative to adjudicate debtor RENTAL COINS TECNOLOGIA DE INFORMAÇÃO LTDA. bankrupt.

### III – CONCLUSION:

That having been said:

*a.* With grounds on article 94, I coupled with 94, paragraph 3 and 96, VI of the LFRJ, I deny the bankruptcy petition against defendant Interag Administração de Fundos Ltda.

*b* With grounds on article 94, I coupled with article 99, both of the LFRJ, I grant the complaint in order to **ADJUDICATE** the company RENTAL COINS TECNOLOGIA DE INFORMAÇÃO LTDA, headquartered in Curitiba, duly registered with the CNPJ under No. 34690143/0001-94 **BANKRUPT**.

The Bankrupt company's managing MEMBER is Francisley Valdevino da Silva, Brazilian citizen, single, registered with the Individual Taxpayer's Register (CPF) under No. 362.089.558-90, resident and domiciled at Rua Deputado Heitor Alencar Furtado, 3350, 13th floor, suite 1301.

**Make the necessary notes and changes on the cover of the case records.**

\*\*\*

### As required by article 99 of the LFRJ:

I - **I appoint** as judicial administrator Átila Sauner Posse Sociedade de Advogados, which shall perform its duties in the exact terms of article 22 of the Bankruptcy Law; it shall be summoned personally and immediately (summons by telephone and other means of instant communication are authorized) to sign in Court, **within 48 hours**, the Instrument of Commitment to perform these duties well and faithfully and assume all responsibilities inherent thereto, under penalty of replacement (articles 33 and 34 of the LFRJ).

*a.* As it is a legal entity, the name of the professional responsible for conducting the bankruptcy or judicial

reorganization proceedings **must be stated** in the instrument of commitment, and the name of the professional cannot be replaced without the judge's authorization. (article 21, sole paragraph, LFRJ)

*b.* The Judicial Administrator must, under penalty of dismissal, **duly fulfill** all duties set forth in article 22 of the LFRJ, in addition to other duties set forth in the same Law.

**c) <u>The Judicial Administrator shall, within five (5) days:</u>**

c.1) **Inform** the Court, informing all interested parties, of the electronic address for the purposes listed in article 22, I, k of the LFRJ; as well as a specific electronic address for the purposes listed in article 22, I, l of the LFRJ.

c.2) **Report** any need to retain assistants, including for verifying credits, at the expense of the bankruptcy estate, in accordance with article 22, I, h coupled with article 25 of the LFRJ, submitting a fee proposal that complies with the parameters of article 22, paragraph 1 of the LFRJ.

c.3) **Inform,** considering the list of creditors in the complaint, the **amount necessary to send correspondence to creditors,** article 22, I, a of the LFRJ, notifying the bankrupt company to deposit, within **24 hours,** the amount necessary for the aforementioned procedural expenses.

c.4) **Strictly observe** the terms for presenting proofs of claim or challenges by creditors (art. 7, paragraph 1 of the LFRJ), as well as for publishing the notice containing the list of creditors (art. 7, paragraph 2 of the LFRJ);

c.5) Immediately **collect** the debtor's assets and documents and prepare the collection report, in accordance with articles 22, III, *f* and *s* coupled with articles 108 and 110, all of the LFRJ;

**d) Immediately afterwards,** the Judicial Administrator shall:

d.1) **Appraise** the collected assets and, if it believes it does not have the technical conditions for the task, request the retainment of an expert appraiser (art. 22, III, *g* and *h,* paragraph 1 of the LFRJ).

d.2) **Perform** the acts necessary to realize the assets and pay creditors, knowing that the seized assets shall be sold within a **maximum term of one hundred and eighty (180)** days as from the date of filing of the collection report, **under penalty of removal from office,** except for justified impossibility, recognized by court decision.

To this end, within a term of up to 60 days as from the instrument of appointment, it shall **present** to the Court a detailed plan for realizing the assets, including an estimated term of no more than 180 days from the date of submission of each collection report (articles 22, III, j coupled with article 99 paragraph 3 and article 139, all of the LFRJ).

II - **I set the legal term of bankruptcy** at ninety (90) days from the first protest due to non-payment;

III - **I order** that the bankrupt company submit, within five (5) days, a nominal list of creditors, indicating the address, amount, nature and classification of their respective claims, if this is not already in the case records, under penalty of a crime of disobedience being characterized;

IV - **I set** a term of fifteen (15) days, counting from the respective publication of this judgment for creditors to present their proofs of claim directly to the Judicial Administrator, pursuant to the provisions of article 7, paragraph 1 of the LFRJ;

**a) The <u>Creditors shall be aware that</u>**

a.1) The adjudication of bankruptcy subjects all creditors, who may only exercise their rights over the assets of the bankrupt company and the unlimitedly liable member pursuant to the law (art. 115 of the LFRJ);

a.2) The proofs of claim filed to the Judicial Administrator (administrative phase) shall meet the requirements of art. 9 of the LFRJ.

a.3) In turn, the proofs of claim and challenges to claim proposed in the form of articles 8 and 10 (judicial phase) shall be filed separately (art. 11 of the LFRJ), under penalty of not being recognized by the Court;

V) **I prohibit** the practice of any act of disposal or encumbrance of the bankrupt company's assets, submitting them preliminarily to judicial authorization and that of the Committee, if any, except for assets the sale of which is part of the debtor's normal activities, only in the event of business continuity.

VI) **I order** the Public Registry of Companies and the Special Office of the Brazilian Federal Revenue Office to record the bankruptcy in the debtor's registry, so that the expression "Bankrupt" appears, as well as the date of the adjudication of bankruptcy and the disqualification to exercise any business activity from the date hereof until the judgment dismissing the obligations.

VII) **Notify** the Central Bank, the Real Estate Registries, the Traffic Department (DETRAN) and the Brazilian Federal Revenue Office and other relevant institutions to inform them about the existence of assets and rights of the bankrupt company.

VIII) I hereby **order** the sealing of the commercial establishment as a form of security until the administrator carries out the collection of assets, after which I will resolve on the possible continuation of business.

IX) **Serve** the electronic notification upon the Public Prosecutors' Office and the Federal, State, and Municipal Public Treasuries where the debtor has an establishment, so that they are aware of the bankruptcy, subject to the provisions of art. 99, XIII coupled with paragraph 2 of the LFRJ.

X) Also, **notify** the Labor Court through its management, informing about the adjudication of bankruptcy of this debtor.

XI) **Issue an** electronic notice containing the full text of this bankruptcy decision, in addition to the list of creditors, as soon as it is available, in the manner provided for in article 99, paragraph 1 of the LFRJ;

XII - Once the notifications have been issued and the notice has been published, as provided, respectively, in item XIII of the head paragraph and in paragraph 1 of art. 99 of the LFRJ, Public Claim Classification Incidents **shall be instituted,** in accordance with article 7-A of the LFRJ, separately, for each Creditor Public Treasury.

Afterwards, notify them to present within 30 days, in the case records thus formed, a complete list of their claims registered as overdue tax liability, accompanied by the calculations, classification, and information on the current status.

**i.** after lapse of the term, return the case records to the judge for advisement.

XIII) - The **Bankrupt Company shall, within five days:**

a) Sign the Appearance Form in the case records, in the manner established in article 104, I of the LFRJ;

b) Deliver to the Judicial Administrator their mandatory books for the purpose provided for in 104, II of the LFRJ;

c) Hand over all assets, books, papers, and documents to the judicial administrator, indicating to it, for collection, any assets that may be in the possession of third parties, art. 104, V of the LFRJ;

**It shall also** comply with all other duties imposed in article 104 of the LFRJ, in due time and as relevant, under penalty of being held liable for the crime of disobedience, as provided for in the sole paragraph of the same article.

XIV- **Communicate** to the 23rd Federal Court of this Capital City, within the scope of case No. 5043166-28.2022.4.04.7000 and to the Federal Chief of Police, Mr. Filipe Hille Pace, within the scope of Police Investigation No. 2022.0014433, who is authorized to access the case records if he deems it necessary.

XV - **Notice** to the parties and all interested parties that the terms of the LFRJ will be counted in calendar

days, art. 189, II of the LFRJ

XVI - **The Office of the Clerk of Court shall:**

a) Comply with all the above determinations, issuing a certificate in the case records.

b) Certify compliance with the Bankrupt Company's obligations. In the event of non-compliance, which shall be certified, the case shall be immediately sent to the judge under advisement.

c) Certify the expiration of the period set out in article 7, paragraph 1 of the LFRJ, thus sending the case to the judge under advisement.

d) After the notifications have been served and the notice published, as provided, respectively, in item XIII of the **head paragraph** and in paragraph 1 of art. 99 of this Law, which shall be promptly certified, I order institution at the initiative of the court, for each creditor Public Treasury, of an **incident of public claim classification** and order the electronic summons of the respective creditor so that, **within thirty (30) days,** they present directly to the judicial administrator or in court, depending on the procedural moment, a complete list of their claims registered as overdue tax liability, accompanied by the calculations, classification, and information on the current situation (article 7-A, head paragraph of the LFRJ).

Once the specified period has elapsed, which must be certified, the case records shall be immediately sent to the judge under advisement.

XVII - Publish. Register. Notify. Necessary Measures.

[1] Curso de direito processual civil, volume 1: teoria geral do direito processual civil, processo de conhecimento, procedimento comum. 63rd ed. Rio de Janeiro: Forense, 2022. Ebook [s.p]

[2] SACRAMONE, Marcelo Barbosa. Comentários à lei de recuperação de empresas e falência / Marcelo Barbosa Sacramone. - 3rd ed. - São Paulo: SaraivaJur, 2022. Ebook [s.p]

[3] CAMPINHO, Sérgio. Curso de direito comercial - falência e recuperação de empresa. 11th ed. São Paulo: Saraiva Educação, 2020. Ebook [s.p]

[4] MAMEDE, Gladston. Falência e recuperação de empresas. 13th ed. Barueri: Atlas, 2022. Ebook [s.p]

[5] PACHECO, José da Silva. Processo de recuperacao judicial, extrajudicial e falência. Rio de Janeiro: Forense, 2013. ebook [s.p]

[6] ZAVASCKI, Teori Albino. Processo de Execução - parte geral. 3rd Ed. São Paulo: Revista dos Tribunais, 2004.

[7] THEODORO JUNIOR, Humberto. Processo de Execução. 19th ed. São Paulo: LEUD, 1999. P. 174.

[8] *in: Comentários à Lei de Recuperação de Empresas e Falência, 3rd ed. São Paulo: Saraiva, 2022.*

[9] *In:* Falência e Recuperação de Empresa, Ed. Renovar, 2015, pg. 07.

Curitiba, October 25, 2022

Luciane Pereira Ramos

Judge

Document digitally signed, pursuant to Provisional Measure (MP) No. 2.200-2/2001, Law No. 11.419/2006, Projudi resolution, TJPR/OE

Validation hereof at https://projudi.tjpr.jus.br/projudi/ - Identifier: PJ5B9 LAGG4 XXJT9 V98YU

PROJUDI - Processo: 0006047-30.2022.8.16.0185 - Ref. mov. 80.1 - Assinado digitalmente por Luciane Pereira Ramos:10086
25/10/2022: JULGADA PROCEDENTE A AÇÃO. Arq: Sentença

**PODER JUDICIÁRIO DO ESTADO DO PARANÁ**
**COMARCA DA REGIÃO METROPOLITANA DE CURITIBA - FORO CENTRAL DE CURITIBA**
**2ª VARA DE FALÊNCIAS E RECUPERAÇÃO JUDICIAL DE CURITIBA - PROJUDI**
**Rua da Glória, 362 - 7º andar - Centro Cívico - Curitiba/PR - CEP: 80.030-060 -**
**Fone: (41) 3200-4733 - E-mail: CTBA-28VJ-S@tjpr.jus.br**

**SENTENÇA**

Classe Processual: Falência de Empresários, Sociedades Empresáriais, Microempresas e Empresas de Pequeno Porte
Assunto Principal: Tutela de Urgência
Processo nº: 0006047-30.2022.8.16.0185

Autor(es): FERNANDO CESAR NERO CORSI
Réu(s): INTERAG ADMINISTRAÇÃO DE FUNDOS LTDA
RENTAL COINS TECNOLOGIA DA INFORMAÇÃO LTDA

**I – RELATÓRIO:**

O autor, Fernando Cesar Nero Corsi, devidamente qualificado na inicial, com fulcro no artigo 94, I da LFRJ e artigos 811 e seguintes, do Código de Processo Civil, ingressou com o presente pedido de execução de título extrajudicial c/c com pedido de falência em face de Rental Coins Tecnologia da Informação Ltda. e Interag Administração de Fundos Ltda., alegando, em síntese, ser credor da ré no valor de R$66.219,97 (sessenta e seis mil duzentos e dezenove reais e noventa e sete centavos), oriundo de contrato particular de cessão temporária de uso de protocolos digitais. Requereu ainda em sede de tutela de urgência o sequestro de criptoativos. Juntou documentos, mov.1.2 a 1.17.

Determinada a emenda a inicial ante a impossibilidade de cumular pedido de execução de título extrajudicial, sequestro e pedido de falência, mov.16, o autor o fez em mov.20, mantendo apenas o pedido de falência com fulcro no artigo 94, I da LFRJ.

Devidamente citada mov.35, a devedora Interag Administração de Fundos Ltda. apresentou contestação e documentos, mov.39, alegando preliminarmente a carência da ação ante a falta de intimação de um dos sócios administradores referente ao protesto, o qual foi recebido pelo porteiro da requerida Rental, bem como que não consta intimação em face da Interag; da falta de interesse processual, uma vez que o autor desvirtua o pedido de falência para o fim de promover a cobrança forçada de seu crédito; no mérito destaca a impossibilidade de decretação da falência ante a existência de ação de Tutela Cautelar em Caráter Antecedente (com pedido de antecipação dos efeitos do deferimento do processamento de Recuperação Judicial e Tutela de Urgência), o qual tramita perante a 2ª Vara de Falências e Recuperação Judicial de Curitiba sob o n. 0008402-13.2022.8.16.0185; da iliquidez da dívida, tendo em vista que o contrato firmado entre as partes não prevê pagamento em moeda real, mas sim locação de criptoativos, cabendo ao locador, ora autor, em caso de rescisão contratual, a restituição do


SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

Case 25-23659-CLC   Doc 2   Filed 11/18/25   Page 30 of 51

bem cedido, ou seja, seus criptoativos; da inexistência de insolvência financeira. Por fim, informou possuir interesse na realização de audiência de conciliação e pugnou pela improcedência da demanda.

Impugnação em mov.51.

Citada ré Rental Coins Tecnologia da Informação Ltda., também apresentou contestação e documentos, mov.71, sustentando, preliminarmente a carência da ação ante a falta de intimação de um dos sócios administradores referente ao protesto, o qual foi recebido pelo porteiro; da falta de interesse processual, uma vez que o autor desvirtua o pedido de falência para o fim de promover a cobrança forçada de seu crédito; no mérito destaca a impossibilidade de decretação da falência ante a existência de ação de Tutela Cautelar em Caráter Antecedente (com pedido de antecipação dos efeitos do deferimento do processamento de Recuperação Judicial e Tutela de Urgência), o qual tramita perante a 2ª Vara de Falências e Recuperação Judicial de Curitiba sob o n. 0008402-13.2022.8.16.0185; da iliquidez da dívida, tendo em vista que o contrato firmado entre as partes não prevê pagamento em moeda real, mas sim locação de criptoativos, cabendo ao locador, ora autor, em caso de rescisão contratual, a restituição do bem cedido, ou seja, seus criptoativos; da inexistência de insolvência financeira.

É o breve relatório. Decido.

## II – FUNDAMENTAÇÃO:

Trata a demanda de pedido falimentar requerido nos termos do artigo 94, I da LFRJ:

> *Art. 94. Será decretada a falência do devedor que:*
>
> *I - sem relevante razão de direito, não paga, no vencimento, obrigação líquida materializada em título ou títulos executivos protestados cuja soma ultrapasse o equivalente a 40 (quarenta) salários-mínimos na data do pedido de falência;*

O pedido inicial é fundamentado em título executivo extrajudicial, na forma do artigo 784, III do CPC, Contrato de Cessão Temporária (aluguel) de Uso de Criptoativos Denominados BTC – BTC, devidamente subscrito por duas testemunhas, mov. 20.7.

A obrigação vencida não foi paga, planilha de cálculo de mov. 20.6, e a impontualidade foi remarcada pelo protesto para fins falimentares, mov. 20.3.

O crédito ultrapassa 40 salários mínimos.

**Preliminares**

<u>Falta de interesse de agir</u>

Argumentam ambos os requeridos a falta de interesse de agir da parte autora pelo desvirtuamento do instituto falimentar, como meio de cobrança forçada do débito.


SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil


Documento assinado digitalmente, conforme MP nº 2.200-2/2001, Lei nº 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU

PROJUDI - Processo: 0006047-90.2022.8.16.0185 - Ref. mov. 80.1 - Assinado digitalmente por Luciane Pereira Ramos:10080
25/10/2022: JULGADA PROCEDENTE A AÇÃO. Arq: Sentença

Sobre o interesse de agir dispõe o Código de Processo Civil:

> Art. 17. Para postular em juízo é necessário *ter interesse* e legitimidade.

A respeito do interesse processual, leciona Humberto Theodoro Júnior[1]

> *O interesse processual, a um só tempo, haverá de traduzir-se numa relação de necessidade e também numa relação de adequação do provimento postulado, diante do conflito de direito material trazido à solução judicial".*

Veja-se que o interesse processual importa em uma análise abstrata da conjugação de três requisitos: necessidade, utilidade e adequação.

No caso dos autos resta evidente o interesse de agir da parte autora, visto que no caso de pedido de falência, para que este se justifique basta que seja demonstrada a impontualidade, considerada manifestação típica do estado de falência do devedor e o título ser certo, líquido e exigível, devidamente protestado, conforme dispõe o artigo 94, inciso I, da LFRJ.

Acerca do tema:

> *Isso porque basta, notadamente no pedido fundamentado em impontualidade injustificada, a demonstração do inadimplemento da obrigação feita por meio do protesto. É desnecessária a demonstração da insolvabilidade econômica do devedor [2].*

Destarte rejeito a preliminar suscitada.

<u>Carência da ação</u>

Igualmente sustentam ambas as rés a carência da ação, uma vez que para a decretação de falência é necessário que o título que a instrua seja protestado especificamente para fins falimentares, com a intimação pessoal do representante legal da ré, o que não ocorreu no presente caso, visto que conforme instrumentos de protesto de mov.20.3, a pessoa que recebeu a intimação não tinha poderes para tanto, bem como inexiste protesto especificamente em face da ré Interag.

No caso em apreço, a existência ou não de vício no protesto, importa em análise do mérito da demanda, pois tratar-se de causa de improcedência do pedido de falência se assim constatado, nos termos do artigo 96 da LFRJ, e portanto, no mérito é que se será analisado.

**Do Mérito:**

<u>I - Interag:</u>

No que tange a falta de protesto em face da ré Interag Administração de Fundos Ltda., razão assiste a parte ré, visto que o artigo 94, §3° da LFRJ é claro ao dispor que os pedidos de falência requeridos com base no artigo 94, I, da LFRJ, deverão vir **acompanhados dos r... ...s de protesto.**

SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil



Documento assinado digitalmente, conforme MP n° 2.200-2/2001, Lei n° 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU

PROJUDI - Processo: 0006047-50.2022.8.16.0185 - Ref. mov. 80.1 - Assinado digitalmente por Luciane Pereira Ramos:10086
25/10/2022: JULGADA PROCEDENTE A AÇÃO. Arq: Sentença

Neste sentido:

> *"A impontualidade do devedor pressupõe, como visto, o não pagamento de obrigação pecuniária líquida reclamável na falência, constante de título executivo, vencida e exigível, sem que se verifique relevante razão de direito. Mas para que o credor esteja legitimado a requerer a falência do devedor, impõe a lei, em complementação **conceitual ao sistema da impontualidade, a sua prova pública, oficial e solene que, a teor do direito positivado, só se faz pelo protesto do título"[3]**.*

> *"O pedido de falência fundado na impontualidade do empresário ou sociedade empresária deve ser instruído, por força do artigo 94, § 3°, da Lei 11.101/2005, com os títulos executivos, exibidos no original ou por cópias autenticadas se estiverem juntados em outro processo, **acompanhados, em qualquer caso, dos respectivos instrumentos de protesto[4]"**.*

> *"Em se tratando de falência com base no art. 94, inciso I, a petição inicial devera ser instruída com os originais dos títulos executivos não pagos no vencimento, **acompanhados das certidões do protesto expedidas pelo tabelião**. Se os títulos estiverem juntos a outro processo, admite-se que a petição inicial da falência sejam anexadas cópias autenticadas[5]"*.

No caso em apreço, compulsando os documentos colacionados, verifica-se que apenas consta protesto em nome da ré Rental Coins, mov.20.3, mas não em face da ré Interag.

E ausente documento indispensável para o pedido de falência com base no artigo 94, I c/c 94, § 3° e 96, VI da LFRJ, a improcedência do pedido em face da ré Interag Administração de Fundos Ltda., é medida que se impõe.

**II - Rental Coins**:

Em sua defesa, mov. 71, a devedora aduz em apertada síntese: a) irregularidade do instrumento de protesto; b) o pedido de falência se confunde com ação de cobrança; c) existência de pedido de recuperação judicial; d) falta liquidez, certeza e exigibilidade ao título, de forma que não pode ser levado a protesto; e) os rendimentos estão sendo pagos à autora; f) ausência de insolvência.

    a. Irregularidade do Instrumento de Protesto:

Argumenta a ré Rental Coins a existência de vício no protesto, visto que este não foi recebido por um dos sócios administradores, mas sim pelo porteiro da requerida.

De acordo com o disposto no artigo 96 da LFRJ:

> *Art. 96. A falência requerida com base no art. 94, inciso I do caput, desta Lei, não será decretada se o requerido provar:*



SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

Documento assinado digitalmente, conforme MP n° 2.200-2/2001, Lei n° 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU

*VI. - vício em protesto ou em seu instrumento; (...)"*

Referido vício do protesto, contudo, não se configura pela ausência de recebimento por um dos sócios administradores, uma vez que já resta entendimento sumulado pelo Superior Tribunal de Justiça que para fins falimentares, será necessário apenas identificação da pessoa que a recebeu:

**SÚMULA 361:**

*A notificação do protesto, para requerimento de falência da empresa devedora, exige a identificação da pessoa que a recebeu*

No caso em tela, o instrumento de protesto, mov.20.3, resta perfeitamente identificada a pessoa que o recebeu, Sr. Rogério Fernandes, documento de identificação de n°10305921-6, o qual a própria ré informa tratar-se de porteiro da empresa.

Destarte não há que se falar em vício no protesto.

*b.* <u>pedido de falência se confunde com ação de cobrança</u>

Segundo a devedora Rental Coins, o crédito que fundamenta o pedido de falência deveria ter sido cobrado pela via adequada, *não podendo (nem mesmo admitido) apresentar um pedido alternativo para que, na hipótese de depósito elisivo, seja a Requerida condenada apenas ao pagamento da quantia apontada.*

Aparentemente a devedora confunde o depósito elisivo, em verdade meio de defesa da requerida, com pedido alternativo para cobrança do crédito.

Este é o teor do pedido da autora:

> *(iii) Que na hipótese dos Réus pretenderem elidir a falência com depósito, o faça com atualização do cálculo apresentado até o dia do pagamento, ou seja, acrescido de atualização monetária, juros legais, honorários de advogado e custas processuais;*

O qual atende ao determinado no parágrafo único do artigo 98 da LFRJ:

> **Parágrafo único**. *Nos pedidos baseados nos incisos I e II do caput do art. 94 desta Lei, o devedor poderá, no prazo da contestação, depositar o valor correspondente ao total do crédito, acrescido de correção monetária, juros e honorários advocatícios, hipótese em que a falência não será decretada e, caso julgado procedente o pedido de falência, o juiz ordenará o levantamento do valor pelo autor.*

Não há, pois, qualquer abuso de direito por parte da autora, quanto menos tentativa de coagir a devedora ao pagamento, confundindo-se o pedido falimentar com cobrança.

O que temos, é a possibilidade legal da devedora elidir a falência em seu próprio benefício, diga-se.

SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

Documento assinado digitalmente, conforme MP n° 2.200-2/2001, Lei n° 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU

PROJUDI - Processo: 0006047.50.2022.8.16.0185 - Ref. mov. 80.1 - Assinado digitalmente por Luciane Pereira Ramos:10080
25/10/2022: JULGADA PROCEDENTE A AÇÃO. Arq: Sentença

c.  existência de pedido de recuperação judicial

Como a própria devedora Rental Coins reconhece, esta ajuizou Ação de Tutela Cautelar em Caráter Antecedente, Autos n. 08402-13.2022.8.16.0185, cujo pedido é:

> *Diante de todo exposto, presente os requisitos formais e materiais necessários à instrução do **presente pedido de tutela cautelar em caráter antecedente com pedido de antecipação dos efeitos do deferimento do processamento de Recuperação Judicial e tutela de urgência**, com supedâneo no artigo 6º, §12 c/c art. 47 da Lei 11.101/2005 e artigo 300 e seguintes do CPC, de modo a se preservar a continuidade da empresa e manutenção dos empregos e geração de trabalho e renda e, PRINCIPALMENTE A SATISFAÇÃO DOS CRÉDITOS DOS CLIENTES, é a presente para requerer a V. Exa que:*
>
> *a) Seja concedida a medida cautelar em caráter antecedente, determinando o início do stay period e antecipando os efeitos do processamento da Recuperação Judicial, ordenando a suspensão de todas as ações e/ou execuções em curso contra as Requerentes, pelo prazo de 180 (cento e oitenta) dias corridos (art. 6º da Lei 11.101 /2005), incluindo-se aquelas decorrentes de obrigações subsidiárias e/ou solidárias, até o início do processo principal;*
>
> *b) Ordenar a suspensão de quaisquer constrições (penhoras, arrestos, sequestros e bloqueios judiciais) eventualmente existentes sobre o patrimônio das Requerentes e das empresas que compõem o Grupo, transferindo-se os valores para o Juízo Universal recuperacional para que, assim, possam vir a ser objeto do devido reembolso aos investidores/credores de forma transparente e escorreita;*
>
> *c) Que sirva a presente decisão como ofício, autorizando o patrono das Requerentes a apresentá-lo aos Juízos onde as ações se encontrem em trâmite, bem como para órgãos públicos e pessoas físicas/jurídicas com quem possui negócios jurídicos;*
>
> *d) **Informa as Requerentes que o pedido principal, o qual será formulado no prazo de 30 dias contados da efetivação da medida aqui pleiteada, consiste em Pedido de Recuperação Judicial, regido pela Lei 11.101/2005;***
>
> *(grifei)*

Considerando que até o momento a inicial destes autos sequer foi recebida pelo Juízo em razão da necessidade de sucessivas emendas, tampouco a medica cautelar foi concedida e quanto menos foi apresentado o pedido principal, não há como considerar ajuizado o pedido de recuperação judicial para fins de defesa e com força para suspender a presente falência.

Importante marcar que o pedido de tutela cautelar antecedente com supedâneo no artigo 6º, §12 c/c art. 47 da Lei 11.101/2005 e artigo 300 e seguintes do CPC, não se confunde e tampouco substitui o necessário pedido de recuperação judicial antecedente ou no prazo da contestação, como autoriza o artigo 95 da LFRJ.



SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

Documento assinado digitalmente, conforme MP nº 2.200-2/2001, Lei nº 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU

Dito isso, não há que se falar em apresentação de pedido de recuperação judicial antecedente ou em sede de contestação.

d. <u>Ausência de liquidez, certeza e exigibilidade do título levado a protesto:</u>

Sem razão a devedora, eis que o título se mostra líquido, certo e exigível.

Vejamos.

O pedido inicial é fundamentado em título executivo extrajudicial, na forma do artigo 784, III do CPC, Contrato de Cessão Temporária (aluguel) de Uso de Criptoativos Denominados BTC – BTC, devidamente subscrito por duas testemunhas, mov. 20.7.

O título executivo em tela se reveste de certeza eis que formalmente perfeito e deste se infere a existência da obrigação.

Segundo Teori Zavascki, para aferição da certeza da obrigação, necessário observar se, pela simples leitura do título, pode-se perceber que há uma obrigação contraída, podendo-se, ainda, constatar quem é o credor, o devedor e quando deve ser cumprida. Se assim ocorrer, haverá, então, certeza da obrigação.[6]

Tais requisitos restam cumpridos.

Enquanto a certeza diz respeito à existência da obrigação, a liquidez refere-se à determinação de seu objeto.

Humberto Theodoro leciona que: *A liquidez consiste no plus que se acrescenta à certeza da obrigação. Por ela demonstra-se não somente se sabe que 'se deve', mas também 'quanto se deve'.[7]*

No caso dos autos o contrato de locação em discussão é líquido, eis que fixa o *quantum* a ser pago ao autor, redigido em Bitcoins, bastando mera operação aritmética para que a obrigação seja traduzida em moeda corrente, no caso Reais, como autoriza o parágrafo único do artigo 786 do CPC: *A necessidade de simples operações aritméticas para apurar o crédito exequendo não retira a liquidez da obrigação constante do título.*

Consta do referido contrato, mov. 1.5:

> *Considerando que Criptoativo é a representação digital de valor denominada em sua própria unidade de conta, cujo preço pode ser expresso em moeda soberana local ou estrangeira, transacionado eletronicamente com a utilização de criptografia e de tecnologias de registros distribuídos, que pode ser utilizado como forma de investimento, instrumento de transferência de valores ou acesso a serviços, e que não constitui moeda de curso legal.*

Verifica-se, pois, que o criptoativo, no caso Bitcoin, pode ser expresso em moeda soberana local ou estrangeira, não havendo óbice para sua conversão, bastando conhecer a cotação do dia, a qual é pública e notória, estando disponível na rede mundial de computadores, bastando ~~~~~~~~~~~~Google para realizar a conversão através de simples operação aritmética.

SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

Documento assinado digitalmente, conforme MP nº 2.200-2/2001, Lei nº 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU



PROJUDI - Processo: 0006047-50.2022.8.16.0185 - Ref. mov. 80.1 - Assinado digitalmente por Luciane Pereira Ramos:10086
25/10/2022: JULGADA PROCEDENTE A AÇÃO. Arq: Sentença

Segundo a Cláusula 1, é objeto do Contrato:

> *1.1 Objeto - CESSÃO TEMPORÁRIA (ALUGUEL) DE CRIPTOATIVOS denominados BTC na quantidade **1.003500**.*
>
> *1.2 O prazo será 12 meses, com Data Inicial em 02/12/2021 e data final em 02/12/2022*

Na cotação de hoje, 1.003500 BTC equivalem a R$ 102.459,08 (cento e dois mil, quatrocentos e cinquenta e nove reais e oito centavos)

Segundo a Clausula 4, o valor pago pela cessão temporária (aluguel) da moeda, será:

> ...
>
> *4.2 O valor convertido pela Cessão Temporária (aluguel), **será aproximadamente de 0.080280** sujeito às forças de ofertas e demanda, sendo estabelecidas pelas condições de mercado.*
>
> ...
>
> *4.4 O valor pela Cessão Temporária (aluguel) estipulado deverá ser pago pela LOCATÁRIA até o sétimo dia útil de cada mês seguinte ao vencido, independentemente de qualquer aviso ou comunicação de vencimento ou cobrança disponibilizado no BackOffice de titularidade do(a) LOCADOR(A), que terá livre acesso para transferência a uma carteira de sua preferência.*
>
> *4.5 Não ocorrendo o pagamento pela Cessão Temporária (Aluguel) mediante a disponibilização no BackOffice na data fixada, estará sujeita a LOCATÁRIA a multa de 3% (três por cento) do valor do aluguel após o vencimento, mais juros de mora de 1% (um por cento) ao mês sobre todo débito, incluído, aí, todas as despesas necessárias na efetivação da respectiva cobrança.*
>
> ...

Como se vê da própria contestação apresentada, a devedora reconhece que as transações entre as partes se dão em moeda corrente nacional, com a conversão das BTCs.

Tal fato é verificado na tabela que a devedora apresenta como sendo de sua plataforma e que comprovaria o pagamento dos rendimentos:

| | | | | |
|---|---|---|---|---|
| 04/08/2022 10:19:20 | BTC | Rendimento referente ao Contrato #b59a45eda4 | R$105.409,35 | B0.001004 |
| 04/07/2022 15:25:13 | BTC | Rendimento referente ao Contrato #b59a45eda4 | R$105.409,35 | B0.001004 |
| 02/06/2022 18:30:15 | BTC | Rendimento referente ao Contrato #b59a45eda4 | R$145.297,78 | B0.001004 |
| 01/02/2022 17:00:42 | BTC | Rendimento referente ao Depósito #119478 | R$202.528,94 | B0.080280 |

No mais, como ensina Marcelo Barbosa Sacramone[8]:

> ***O fato de se exigir o montante do valor devido não impede que obrigações de dar ou de fazer, diversas da obrigação de pagar quantia certa, sejam também** pedido falimentar. A identificação da prestação, com a*

SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

PROJUDI - Processo: 0006047-50.2022.8.16.0185 - Ref. mov. 80.1 - Assinado digitalmente por Luciane Pereira Ramos:10080
25/10/2022: JULGADA PROCEDENTE A AÇÃO. Arq: Sentença

*especificação dos objetos a serem entregues ou das prestações, positivas ou negativas, a serem realizadas, permite a determinação do conteúdo da obrigação.*

Ou seja, o título deve demonstrar a exata quantidade de bens devidos (Ex: quanto pagar ou o que entregar), ou permitir que o número final possa ser apurado aritmeticamente.

No caso em tela, o *quantum* exigido é facilmente apurável mediante simples operação aritmética, não olvidando que a devedora indica que sua própria plataforma utiliza a moeda corrente nacional em suas transações.

Assim sendo, não há que se falar em iliquidez do título, seja para fim de protesto ou pedido de falência.

Por fim, a exigibilidade está relacionada com a possibilidade de se exigir o cumprimento da obrigação inserta no título, por não estar condicionada a qualquer condição ou termo.

Este requisito, nas ações de falência, comprova-se por meio do protesto falimentar, o qual foi regularmente realizado, como antes visto.

*e.* os rendimentos estão sendo pagos à autora:

A devedora alega que os rendimentos estariam sendo depositados normalmente na conta da parte autora, como prova de pagamento junta a seguinte imagem:

| 04/08/2022 10:19:20 | BTC | Rendimento referente ao Contrato #b59a45eda4 | R$105.409,35 | B0.001004 |
| 04/07/2022 15:25:13 | BTC | Rendimento referente ao Contrato #b59a45eda4 | R$105.409,35 | B0.001004 |
| 02/06/2022 18:30:15 | BTC | Rendimento referente ao Contrato #b59a45eda4 | R$145.297,78 | B0.001004 |
| 01/02/2022 17:00:42 | BTC | Rendimento referente ao Depósito #119478 | R$202.528,94 | B0.080280 |

Por evidente esta imagem, na falta de quaisquer documentos ou mesmo indícios, não serve a comprovar o pagamento dos rendimentos devidos à autora e, muito menos, serve a afastar a impontualidade regularmente atestada pelo protesto do título executivo que embasa este pedido falimentar.

f) ausência de insolvência.

A questão da insolvência financeira não importa para o desenrolar desta demanda que tem por fundamento a impontualidade injustificada da devedora, a qual comprova-se, como antes dito, pelo protesto para fins falimentares.

*** 

SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

Documento assinado digitalmente, conforme MP nº 2.200-2/2001, Lei nº 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: P.5B9 LAGG4 XXJT9 V98YU

De outra banda, a presente demanda tem relevante aspecto econômico-social que normalmente não está presente em outros pedidos falimentares.

O passivo amealhado pela devedora Rental Coins e seu sócio-administrador Francisley Valdevino da Silva tomou tal proporção que é objeto do **Inquérito Policial n. IPL n°. 2022.0014433**.

O referido Inquérito Policial foi instaurado pela Polícia Federal para apurar o cometimento, em tese e a princípio, dos delitos descritos nos Art. 7º, II - Lei 7.492/1986, - Crimes contra o Sistema Financeiro Nacional, Art. 2, IX - Lei 1.521/1952 - Crimes contra a economia popular, Art. 2º - Lei 12.850/2013 - Define organização criminosa e dispõe sobre a investigação criminal e dá outras providências., Art. 171 - Decreto Lei 2.848/1940 - Código Penal e Art. 1º - Lei 9.613 /1998 - Lavagem de Dinheiro.

A investigação teve início por solicitação da Homeland Security Investigations - HSI dos EUA, recebida pela Polícia Federal por meio da Interpol, contendo informações de que a empresa FORCOUNT e o brasileiro FRANCISLEY VALDEVINO DA SILVA, estão sendo investigados pela Força Tarefa de El Dorado (El Dorado Task Force), da HSI Nova York, por envolvimento em uma conspiração de lavagem de dinheiro, com base em um esquema pirâmide de investimentos em criptomoedas.

As investigações realizadas pela Polícia Federal culminaram na Operação Poyais, deflagrada no dia 06/10/2022 nesta cidade de Curitiba, oportunidade em agentes da Polícia Federal cumpriram mandados de busca e apreensão expedidos pela 23ª Vara Federal de Curitiba, com a finalidade de aprofundar as investigações que apontam a existência de esquema fraudulento que teria movimentado quase R$ 4 bilhões (quatro bilhões de reais) no Brasil.

Tais fatos constam não apenas nos autos em trâmite na 23ª Vara Federal de Curitiba, protegidos por sigilo, mas são amplamente conhecidos da imprensa, merecendo inclusive, matéria jornalística vinculada no programa dominical Fantástico:

https://youtu.be/WeMPvmgE-ew

Mas não apenas, seleciono algumas matérias jornalísticas para fim de exemplificação:

https://oglobo.globo.com/brasil/noticia/2022/10/sheik-dos-bitcoins-e-alvo-de-operacao-da-pf. ghtml

https://jornalistaslivres.org/pf-faz-operacao-contra-sheik-dos-bitcoins/

https://www.infomoney.com.br/mercados/pf-mira-sheik-das-criptomoedas-em-nova-operacao-esquema-movimentou-r-4-bi-no-brasil-e-no-exterior/

https://portaldobitcoin.uol.com.br/pf-prende-acusado-de-criar-piramide-com-criptomoedas-que-movimentou-r-4-bilhoes-no-brasil-e-nos-eua/

https://economia.uol.com.br/noticias/redacao/2022/10/06/operacao-sheik-dos-biticoins.htm

SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

Documento assinado digitalmente, conforme MP n° 2.200-2/2001, Lei n° 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU

PROJUDI - Processo: 0006047-50.2022.8.16.0185 - Ref. mov. 80.1 - Assinado digitalmente por Luciane Pereira Ramos:10086
25/10/2022: JULGADA PROCEDENTE A AÇÃO. Arq: Sentença

https://cbncuritiba.com.br/materias/quadrilha-investigada-por-fraudes-bilionarias-envolvendo-criptomoedas-no-brasil-e-no-exterior-e-alvo-da-operacao-da-policia-federal/

https://cbncuritiba.com.br/materias/policia-federal-faz-balanco-parcial-de-apreensoes-da-operacao-poyais/

https://www.bandab.com.br/seguranca/curitibano-que-comandava-fraudes-com-criptomoedas-e-alvo-da-pf/

https://www.otempo.com.br/economia/vitimas-de-sheik-dos-bitcoins-cobram-r-1-5-bilhoes-1.2752017

https://www1.folha.uol.com.br/mercado/2022/07/empresa-de-bitcoin-que-deu-golpe-em-sasha-faz-mais-vitimas-entenda-a-fraude-e-saiba-fugir.shtml

O sócio-administrativo da empresa Rental Coins, FrancisLey Valdevino da Silva seria conhecido como Sheik dos Biticoins, segundo consta do Inquérito Policial e das matérias jornalísticas, levaria vida nababesca, vivendo em meio ao luxo oriundo, provavelmente, de suas atividades irregulares.

Seleciono algumas matérias jornalísticas apenas para fim de exemplificação:

https://oglobo.globo.com/podcast/noticia/2022/07/a-historia-do-sheik-das-criptomoedas.ghtml

https://g1.globo.com/pr/parana/noticia/2022/10/17/sheik-dos-bitcoins-empresario-alvo-de-operacao-ostentava-vida-de-luxo-com-mansao-avioes-e-carros-importados-veja-videos.ghtml

https://www.metropoles.com/distrito-federal/na-mira/sabia-quem-e-o-sheik-dos-bitcoins-que-entrou-na-mira-da-pf-e-dos-eua

https://autopapo.uol.com.br/curta/carros-sheik-dos-bitcoins/

https://www1.folha.uol.com.br/mercado/2022/10/ouro-relogios-e-ate-aviao-do-wesley-safadao-vitimas-de-sheik-dos-bitcoins-cobram-r-15-bi.shtml

Depreende-se, portanto, que a falência da devedora Rental Coins tem ainda efeito saneador ao retirar do mercado empresa através da qual teriam sido cometidas irregularidades que lesionaram número expressivo de credores.

Uma das finalidades da falência é retirar do mercado, empresários sem condições de solver pontualmente suas obrigações para com os credores e colaboradores, estancando ainda a possibilidade de cometimento de irregularidades em prejuízo da sociedade.

Ensina Sérgio Campinho[9]:

> *"Na sua ótica de liquidação judicial do patrimônio do empresário insolvente emerge, ainda, como forma de saneamento do mercado, realizando a eliminação dos empresários e das empresas por eles desenvolvidas, econômica e financeiramente sem viabilidade de recuperação. Visa, pois, preservar o mercado,*

SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil


Documento assinado digitalmente, conforme MP n° 2.200-2/2001, Lei n° 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU

PROJUDI - Processo: 0006047.50.2022.8.16.0185 - Ref. mov. 80.1 - Assinado digitalmente por Luciane Pereira Ramos:10086
25/10/2022: JULGADA PROCEDENTE A AÇÃO. Arq: Sentença

Documento assinado digitalmente, conforme MP n° 2.200-2/2001, Lei n° 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU

*impedindo que prossigam em suas atividades, dada a evidente perturbação e desequilíbrio que são capazes de nele provocar".*

\*\*\*

Dito isso, em que pese a defesa da devedora, restou comprovado nos autos a inadimplência injustificada, consubstanciada em título executivo, vencido e não pago, devidamente encaminhado a protesto.

Assim, preenchidos todos os requisitos do artigo 94, inciso I, da LFRJ, mostra-se imperativa a decretação da falência da devedora RENTAL COINS TECNOLOGIA DE INFORMAÇÃO LTDA.

## III – DISPOSITIVO:

Isto posto:

*a.* Com fulcro no artigo 94, I c/c 94, § 3º e 96, VI da LFRJ, julgo improcedente o pedido de falência em face da requerida Interag Administração de Fundos Ltda.

*b.* Com fulcro no artigo 94, I c/c artigo 99, ambos da LFRJ, julgo procedente o pedido inicial, para o fim de **DECRETAR A FALÊNCIA** da empresa RENTAL COINS TECNOLOGIA DE INFORMAÇÃO LTDA, com sede em Curitiba, devidamente inscrita no CNPJ sob n. 34690143/0001-94.

A Falida tem como sócio administrador Francisley Valdevino da Silva, brasileiro, solteiro, inscrito no CPF sob n. 362.089.558-90, residente e domiciliado à rua Deputado Heitor Alencar Furtado, 3350, 13º andar, sala 1301.

**Procedam-se as anotações e alterações necessárias na capa dos autos.**

\*\*\*

## Conforme exige o artigo 99 da LFRJ:

I – **Nomeio** como administrador judicial Átila Sauner Posse Sociedade de Advogados, que desempenhará suas funções nos exatos termos do artigo 22 da Lei Falimentar; devendo ser intimado pessoalmente e de imediato (autorizada a intimação por telefone e outros meios de comunicação instantânea), para, **em 48 horas**, assinar na sede do Juízo, o Termo de Compromisso de bem e fielmente desempenhar o cargo e assumir todas as responsabilidades a ele inerentes, sob pena de substituição (artigos 33 e 34 da LFRJ).

*a.* Em se tratando de pessoa jurídica, **declarar-se-á**, no termo de compromisso o nome do profissional responsável pela condução do processo de falência ou de recuperação judicial, que não poderá ser substituído sem autorização do juiz. (artigo 21, par. único, LFRJ)

*b.* Deve o Administrador Judicial, sob pena de destituição, **cumprir fielmente** todas as deveres insculpidos no artigo 22 da LFRJ, além dos demais contidos na mesma Lei.

**c** ~~SANDRA REGINA MATTOS RUDZIT~~ **) dias, deve o Administrador Judicial:**
Certified Translator
Commercial Interpreter
São Paulo | Brazil

PROJUDI - Processo: 0006047-50.2022.8.16.0185 - Ref. mov. 80.1 - Assinado digitalmente por Luciane Pereira Ramos:10086
25/10/2022: JULGADA PROCEDENTE A AÇÃO. Arq: Sentença

c.1) **Informar** ao Juízo, dando ciência a todos os interessados, endereço eletrônico para os fins elencados no artigo 22, I, k da LFRJ; bem como endereço eletrônico específico para os fins elencados no artigo 22, I, l da LFRJ.

c.2) **Informar** a eventual necessidade de contratação de auxiliares, inclusive para a verificação de créditos, às expensas da massa falida, conforme artigo 22, I, h c/c 25, da LFRJ, apresentando proposta de honorários que observem os parâmetros do artigo 22, § 1º, da LFRJ.

c.3) **Informar**, considerando o rol de credores da peça inicial, o **valor necessário para a expedição da correspondência aos credores**, artigo 22, I, a, da LFRJ, intimando-se a falida para que deposite, em **24 horas,** o valor necessário para a referida despesa processual.

c.4) **Observar com rigor** os prazos de apresentação das habilitações ou divergências dos credores (art 7º § 1º da LFRJ), bem como da publicação do edital contendo a relação de credores (art 7º § 2º da LFRJ);

c.5) **Arrecadar** de imediato os bens e documentos do devedor e elaborar o auto de arrecadação, nos termos dos arts. 22, III, *f* e *s* c.c 108 e 110, todos da LFRJ;

**d) Ato contínuo**, deverá o Administrador judicial:

d.1) **Avaliar** os bens arrecadados e, caso entenda não ter condições técnicas para a tarefa, requerer a contratação de perito avaliador (art. 22, III, *g* e *h*, § 1º da LFRJ ).

d.2) **Praticar** os atos necessários à realização do ativo e ao pagamento dos credores, ciente que a venda dos bens arrecadados deverá ocorrer em no **prazo máximo 180** (cento e oitenta) dias, contado da data da juntada do auto de arrecadação, **sob pena de destituição**, salvo por impossibilidade fundamentada, reconhecida por decisão judicial.

Para tanto, deverá, no prazo de até 60 dias, contado do termo de nomeação, **apresentar** ao Juízo, plano detalhado de realização dos ativos, inclusive com a estimativa de tempo não superior a 180 dias a partir da juntada de cada auto de arrecadação (artigos 22, III, j c.c 99 § 3º e 139, todos da LFRJ).

II – **Fixo o termo legal da falência** em 90 (noventa) dias contados do primeiro protesto por falta de pagamento;

III - **Determino** que o falido apresente, em 05 (cinco) dias, relação nominal dos credores, indicando endereço, importância, natureza e classificação dos respectivos créditos, se esta já não se encontrar nos autos, sob pena de caracterização de crime de desobediência;

IV - **Fixo** o prazo de 15 (quinze) dias, estes contados da respectiva publicação em edital desta sentença, para que os credores apresentem as suas habilitações de crédito diretamente ao Administrador Judicial, na forma prevista no artigo 7º, §1º da LFRJ;

**a) Cientes os credores que**


SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

a.1) A decretação da falência sujeita todos os credores, que somente poderão exercer os seus direitos sobre os bens do falido e do sócio ilimitadamente responsável na forma da lei (art. 115 da LFRJ);

a.2) As habilitações de crédito apresentadas ao Administrador Judicial (fase administrativa), deverão atender aos requisitos do art. 9º da LFRJ.

a.3) Por sua vez, as habilitações e impugnações de crédito propostas na forma no artigo 8º e 10º (fase judicial), deverão ser autuadas em separado (art. 11 da LFRJ), sob pena de não serem conhecidas pelo Juízo;

V) **Proíbo** a prática de qualquer ato de disposição ou oneração de bens do falido, submetendo-os preliminarmente à autorização judicial e do Comitê, se houver, ressalvados os bens cuja venda faça parte das atividades normais do devedor, somente na hipótese de continuidade dos negócios.

VI) **Ordeno** ao Registro Público de Empresas e à Secretaria Especial da Receita Federal do Brasil, que procedam à anotação da falência no registro do devedor, para que conste a expressão "Falido", a data da decretação da falência e a inabilitação para exercer qualquer atividade empresarial a partir desta data até a sentença de extinção das obrigações.

VII) **Oficie-se** ao Banco Central, Registros Imobiliários, DETRAN e Receita Federal e demais instituições pertinentes para que informem sobre a existência de bens e direitos do falido.

VIII) **Determino**, de momento, a lacração do estabelecimento comercial como forma de segurança até que o administrador promova a arrecadação de bens, quando, após, deliberarei sobre eventual continuidade dos negócios.

IX) **Promova-se** a intimação eletrônica do Ministério Público e das Fazendas Públicas Federal, Estadual e Municipal em que o devedor tiver estabelecimento, para que tomem conhecimento da falência, observando-se o contido no art. 99, XIII c/c § 2º da LFRJ.

X) **Oficie-se**, também, à Justiça do Trabalho através da sua direção, informando sobre a decretação da falência do presente devedor.

XI) **Expeça-se** edital eletrônico contendo a íntegra desta decisão de decretação de falência, além da relação dos credores, assim que houver, na forma prevista no artigo 99, § 1º da LFRJ;

XII - Realizadas as intimações e publicado o edital, conforme previsto, respectivamente, no inciso XIII do **caput** e no § 1º do art. 99 da LFRJ, **instaurem-se**, na forma do artigo 7o-A da LFRJ, em apartado, Incidentes de Classificação de Crédito Público, para cada Fazenda Pública Credora.

Após, intimem-se para que, no prazo de 30 dias, apresentem, naqueles autos formados, a relação completa de seus créditos inscritos em dívida ativa, acompanhada dos cálculos, da classificação e das informações sobre a situação atual.

**i.** o prazo fixado, voltem conclusos.

SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

Documento assinado digitalmente, conforme MP nº 2.200-2/2001, Lei nº 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU

XIII) – **Deve o Falido, no prazo de cinco dias:**

a) Assinar nos autos o Termo de Comparecimento, na forma estabelecida no artigo 104, I da LFRJ;

b) Entregar ao Administrador Judicial os seus livros obrigatórios para o fim previsto no 104, II da LFRJ;

c) Entregar todos os bens, livros, papéis e documentos ao administrador judicial, indicando-lhe, para serem arrecadados, os bens que porventura tenha em poder de terceiros, art. 104, V da LFRJ;

**Deve ainda,** cumprir todas os demais deveres impostos no artigo 104 da LFRJ, ao seu devido tempo e pertinência, sob pena de responder por crime de desobediência, conforme dispõe o parágrafo único do mesmo artigo.

XIV– **Comunique-se** à 23ª Vara Federal desta Capital, no bojo dos autos n. 5043166-28.2022.4.04.7000 e ao Delegado da Polícia Federal, Dr. Filipe Hille Pace, no bojo do Inquérito Policial n. 2022.0014433, autorizado o acesso aos autos se assim entenderem necessário.

XV **- Ciência** às partes e todos os interessados que os prazos da LFRJ serão contados em dias corridos, art. 189, II da LFRJ

XVI - **Deve a Serventia:**

a) Cumprir todo o antes determinado, exarando certidão nos autos.

b) Certificar acerca do cumprimento das obrigações do Falido. Em caso de descumprimento, que deverá ser certificado, fazer os autos imediatamente conclusos.

c) Certificar o decurso do prazo fixado no artigo 7º, §1º da LFRJ, fazendo então ao os autos conclusos.

d) Após realizadas as intimações e publicado o edital, conforme previsto, respectivamente, no inciso XIII do **caput** e no § 1º do art. 99 desta Lei, o que deverá ser prontamente certificado, determino a instauração de ofício, para cada Fazenda Pública credora, **incidente de classificação de crédito público** e determinará a intimação eletrônica do respectivo credor para que, **no prazo de 30 (trinta) dias**, apresente diretamente ao administrador judicial ou em juízo, a depender do momento processual, a relação completa de seus créditos inscritos em dívida ativa, acompanhada dos cálculos, da classificação e das informações sobre a situação atual (artigo 7º-A, *caput*, da LFRJ).

Decorrido o prazo assinalado, o que deverá ser certificado, venham os autos imediatamente.

XVII - Publique-se. Registre-se. Intime-se. Diligências Necessárias.

SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

Documento assinado digitalmente, conforme MP n° 2.200-2/2001, Lei n° 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU

PROJUDI - Processo: 0006047-50.2022.8.16.0185 - Ref. mov. 80.1 - Assinado digitalmente por Luciane Pereira Ramos:10086
25/10/2022: JULGADA PROCEDENTE A AÇÃO. Arq: Sentença

Case 25-23659-CLC    Doc 2    Filed 11/18/25    Page 44 of 51

[1] Curso de direito processual civil, volume 1: teoria geral do direito processual civil, processo de conhecimento, procedimento comum. 63. ed. Rio de Janeiro: Forense, 2022. Ebook [s.p]

[2] SACRAMONE, Marcelo Barbosa. Comentários à lei de recuperação de empresas e falência / Marcelo Barbosa Sacramone. – 3. ed. – São Paulo: SaraivaJur, 2022. Ebook [s.p]

[3] CAMPINHO, Sérgio. Curso de direito comercial - falência e recuperação de

empresa. 11. ed. São Paulo: Saraiva Educação, 2020. Ebook [s.p]

[4] MAMEDE, Gladston. Falência e recuperação de empresas. 13. ed. Barueri: Atlas, 2022. Ebook [s.p]

[5] PACHECO, José da Silva. Processo de recuperacao judicial, extrajudicial e falencia. Rio de Janeiro: Forense, 2013.

ebook [s.p]

[6] ZAVASCKI, Teori Albino. Processo de Execução – parte geral. 3. Ed. São Paulo: Revista dos Tribunais, 2004.

[7] THEODORO JÚNIOR, Humberto. Processo de Execução. 19 ed. São Paulo: LEUD, 1999. P. 174.

[8] *in: Comentários à Lei de Recuperação de Empresas e Falência, 3ª ed. São Paulo: Saraiva, 2022.*

[9] *In:* Falênciae Recuperação de Empresa, Ed. Renovar, 2015, pg. 07.

Curitiba, em 25 de outubro de 2022

Luciane Pereira Ramos

Juíza de Direito

Documento assinado digitalmente, conforme MP nº 2.200-2/2001, Lei nº 11.419/2006, resolução do Projudi, do TJPR/OE
Validação deste em https://projudi.tjpr.jus.br/projudi/ - Identificador: PJ5B9 LAGG4 XXJT9 V98YU

30 JUL 2025 - I-66264

SANDRA REGINA MATTOS RUDZIT
Certified Translator
Commercial Interpreter
São Paulo | Brazil

*EXHIBIT "3"*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

RENTAL COINS TECNOLOGIA DA                    Chapter 15
INFORMAÇÃO LTDA.,

                                              Case No.:

       Debtor in a Foreign Proceeding.
_____/

**ORDER GRANTING MOTION FOR ORDER GRANTING RECOGNITION
OF FOREIGN MAIN PROCEEDINGS PURSUANT TO §§ 1515 AND 1517
<u>OF THE BANKRUPTCY CODE</u>**

      This matter came on for hearing on _____ ___, 2025, (the "Hearing") upon the *Motion*

*for Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of*

*the Bankruptcy Code and Related Relief* (the "Motion") [Doc. No. __] filed by Átila Sauner Posse

Sociedade de Advogados ("ASPS"), the Judicial Administrator of RENTAL COINS

TECNOLOGIA DA INFORMAÇÃO LTDA. ("Debtor") seeking entry of an Order pursuant to §§ 105, 1515, 1517, 1520 and 1521 recognizing the Debtor's bankruptcy proceeding pending before the 2nd Bankruptcy and Judicial Reorganization Court of Curitiba (the "Brazilian Bankruptcy Court"), under Chapter 15 of the Bankruptcy Code[1] and providing related relief. The Court, having considered the Motion, the Chapter 15 Petition for the Debtor, and the Declaration of _____ in support of the Motion [Doc No. __]; having heard argument of counsel at the Hearing; and being otherwise duly informed makes the following order.

The Court finds that:

A.      Due and timely notice of the filing of the Chapter 15 Petition, the Motion, and the Notice of Hearing, was given by ASPS.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501.

C.      Venue of these proceedings are proper in this judicial district pursuant to 28 U.S.C. § 1410.

D.      This is a core foreign proceeding under 28 U.S.C. § 157(b)(2)(P).

E.      ASPS qualifies as a "foreign representatives", as defined in 11 U.S.C. § 101(24).

F.      This Chapter 15 Case was properly commenced pursuant to 11 U.S.C. §§ 1504, 1515 and 1517.

G.      ASPS has met the requirements of 11 U.S.C. §§ 1515(b), 1515(c), 1515(d), and Rule 1007(a)(4) of the Federal Rule of Bankruptcy Procedure.

---

[1] Unless otherwise specified herein, all statutory references shall be to Title 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

H.    The Brazilian Proceeding constitutes a foreign proceeding under 11 U.S.C. § 101(23), and a foreign main proceeding under 11 U.S.C. § 1502(4).

I.    Accordingly, the Debtor's Brazilian Proceeding is entitled to recognition as a foreign main proceeding by this Court under 11 U.S.C. § 1517(b)(1).

J.    The Judicial Administrator is entitled to all relief available under 11 U.S.C. § 1520.

K.    The Judicial Administrator is further entitled to the relief expressly set forth in 11 U.S.C. § 1521.

L.    The relief granted by this Order is necessary and appropriate, in the interests of public and international comity, consistent with the public policy of the United States, warranted pursuant to 11 U.S.C. § 1521 and will not cause any hardship to the creditors of the Debtor or other parties that is not outweighed by the benefits of the relief being granted.

M.    The Court finds that the interests of the creditors, interested entities, the Debtor, and the Debtor's estates are sufficiently protected by the rights and obligations under the Federal Rules of Bankruptcy Procedure and/or Federal Rules of Civil Procedure governing the taking of discovery.

Accordingly, it is **ORDERED** and **ADJUDGED**:

1.    The Motion is **GRANTED**.

2.    The Brazilian Proceeding is granted recognition as a "foreign main proceeding" under 11 U.S.C. § 1517.

3.    The Brazilian Proceeding shall be given full force and effect and be binding on and enforceable in the United States against all persons and entities.  Unless the Court orders otherwise, orders of the Brazilian Proceeding regarding the administration of the Brazilian Proceeding, shall be given full force and effect and be binding in the United States against all persons and entities.

4.     The Judicial Administrator shall have the authority to act independently to carry out any of the duties and powers granted by this Order.

5.     The provisions of 11 U.S.C. § 1520(a) – (c) apply to this proceeding, including but not limited to the application of the automatic stay under 11 U.S.C. § 362 with respect to the Debtor or property of the Debtor in the United States.

6.     Under 11 U.S.C. § 1520(a)(3), ASPS is further authorized to operate and may exercise the powers of a trustee under, and to the extent provided by 11 U.S.C. §§ 363 and 552.

7.     Under 11 U.S.C. § 1520(b), ASPS is further authorized to commence an individual action or proceeding in a foreign country to the extent necessary to preserve a claim against the Debtor.

8.     Under 11 U.S.C. § 1520(c), ASPS is further authorized to file a petition commencing a case under Title 11 of the United States Code.

9.     Under 11 U.S.C. § 1521(a)(1), all persons and entities are stayed from commencing or continuing any action or proceeding concerning the assets, rights, obligations or liabilities, of the Debtor or of Debtor's estate.

10.     Under 11 U.S.C. §1521(a)(2), all persons and entities are stayed from executing against the assets of Debtor or of Debtor's estate.

11.     Under 11 U.S.C. §1521(a)(3), all persons and entities are prohibited from transferring, encumbering or otherwise disposing of, or exercising control over any assets of Debtor or of Debtor's estate.

12.     Under 11 U.S.C. §1521(a)(4), ASPS is authorized to examine witnesses, take evidence or seek the delivery of information concerning the assets, affairs, rights, obligations or liabilities of Debtor or Debtor's estate pursuant to §1521(a)(4) and the Federal Rules of

Bankruptcy Procedure, including without limitation the procedure of Fed. R. Bankr. P. 2004 and Local Rule 2004-1, without further order of this Court.

13.     Under 11 U.S.C. §1521(a)(5), ASPS is entrusted with the full administration and realization of all or part of the assets of Debtor or of Debtor's estate within the territorial jurisdiction of the United States.

14.     Under 11 U.S.C. §1521(a)(7), all persons and entities provided notice of this Order who are in possession, custody or control of assets, property, or the proceeds thereof, of Debtor or Debtor's bankruptcy estate located within the territorial jurisdiction of the United States, shall immediately advise ASPS by written notice sent to the following addresses:

Attn: _____<br>
With copy to:<br>
Attn: Daniel M. Coyle and Martha A. Hagar<br>
Sequor Law, P.A.<br>
1111 Brickell Ave., Suite 1250<br>
Miami, FL 33131

which written notice shall set forth: (i) the nature of such property or proceeds; (ii) when and how such property or proceeds came into the custody, possession or control of such person or entity; and (iii) the full identity and contact information for such person or entity.  ASPS shall file with the Court information demonstrating those persons and/or entities to whom they have provided notice of this Order.

15.     Under 11 U.S.C. §1521(a)(7), ASPS may pursue state and/or foreign law avoidance actions, as well as seeking any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

16.     Other than a counterclaim to a suit brought by ASPS, no person or entity may commence suit against ASPS in any court, including this Court, in the United States without first obtaining leave of this Court.

5

17.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) this Order shall be effective immediately and enforceable upon entry and shall constitute a final order within the meaning of 28 U.S.C. § 158(a); (ii) ASPS is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (iii) ASPS is authorized and empowered, and may in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

18.     No action taken by ASPS in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of the Liquidation or any order entered in or in respect of the Chapter 15 case (including any adversary proceedings or contested matters) will be deemed to constitute a waiver of immunity afforded ASPS, including pursuant to 11 U.S.C. §§ 306 and 1510.

19.     This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through this Chapter 15 case, and any request by any person or entity for relief from the provisions of this Order.

20.     This Court shall retain jurisdiction with respect to the administration, realization, and distribution of the assets of ASPS within the territorial jurisdiction of the United States.

###

Submitted by:

Daniel M. Coyle
Florida Bar No. 100225
SEQUOR LAW, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Telephone: 305-372-8282
Facsimile: 305-372-8202
E-Mail: dcoyle@sequorlaw.com